**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

JEREMY ZIELINSKI,

                                    Plaintiff,

            v.                                          No. 9:17-CV-1087
                                                        (GTS/CFH)

ANTHONY J. ANNUCCI,

                                    Defendant.

_____

**APPEARANCES:**                          **OF COUNSEL:**

Jeremy Zielinski
16-A-3601
Elmira Correctional Facility
P.O. Box 500
Elmira, New York 14902
Plaintiff pro se

Attorney General for the                  DAVID A. ROSENBERG, ESQ.
State of New York                          Assistant Attorney General
Attorney for Defendant
The Capitol
Albany, New York 12224-0341

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

    Plaintiff pro se Jeremy Zielinski ("Zielinski"), an inmate who was, at all relevant

times, in the custody of the New York Department of Corrections and Community

Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that

DOCCS Acting Commissioner Anthony J. Annucci violated his constitutional rights

_____

    [1] This matter was referred to the undersigned for report and recommendation pursuant to 28
U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

under the First and Fourteenth Amendments.  See Dkt. No. 1 ("Compl.").

# I. Background

## A. Procedural History

On September 29, 2017, Zielinski commenced this action against Annucci with the filing of a pro se civil rights complaint.  See Compl.  Zielinski challenged "a policy and custom of . . . DOCCS . . . of prohibiting inmates at facilities which sell televisions on commissary, referred to by DOCCS as 'TV Facilities,' from receiving books, magazines, educational supplies, religious materials, and other items permissible under DOCCS' 'package' policies."  Compl. at 1.  With the Complaint, Zielinski filed a motion for a preliminary injunction seeking an order directing Annucci to refrain from enforcing the challenged policies.  Dkt. No. 5.

In a Decision and Order filed on January 11, 2018 (the "January Order"), the Court reviewed the Complaint in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A, and directed Annucci to respond to the following: (1) First Amendment claims related to the right to the free flow of mail; (2) Fourteenth Amendment procedural due process claim related to books and legal correspondence rejected upon delivery, and returned to sender, without notice; and (3) substantive due process claims related to the constitutionality of DOCCS' Directives.  Dkt. No. 10 at 11, 20-22, 28.  In the January Order, the Court also directed Annucci to respond to Zielinski's motion seeking preliminary injunctive relief.  Id. at 28.

On April 6, 2018, Annucci filed a response to the motion for injunctive relief.  Dkt.

No. 21.  Annucci argued that Plaintiff's motion was moot because DOCCS eliminated the "subject package restriction[s]", effective April 6, 2018.  Id.  Annucci claimed, "[i]n other words, Plaintiff and all other inmates at 'TV facilities' are now afforded the same package privileges as inmates at all DOCCS facilities."  Id.  In response, Zielinski withdrew his motion for injunctive relief, stating, "at least at Clinton C.F. they appear to be complying with the policy change and are allowing inmates to get packages they previously would not have been able to."  Dkt. No. 33.

On April 6, 2018, in lieu of an answer, Annucci moved, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") to dismiss the Complaint.  Dkt. No. 22.  Zielinski opposed the motion to dismiss, and filed a cross-motion to amend the complaint.  Dkt. No. 37.  With the motion to amend, Zielinski provided a Proposed Amended Complaint.  Dkt. No. 37-3 ("Am. Compl.").  Annucci opposes the motion to amend.  Dkt. No. 44.

## B. Facts[2]

The facts are related herein in the light most favorable to Zielinski as the non-moving party.  See subsection II(B) infra.  Since 1980, DOCCS' inmates have been permitted to receive packages including, books, magazines, periodicals, publications, educational supplies, art supplies, religious materials, clothing, and food.

---

[2] For the reasons set forth below, the facts are set forth as alleged by Zielinski in his Amended Complaint (Dkt. No. 37-3) and exhibits annexed thereto (Dkt. Nos. 37-4, 37-5, 37-6).  See subsection II.B. supra, at 21-30.

Am. Compl. at 5.  Zielinski presents constitutional challenges to DOCCS' Directives related to package restrictions imposed on inmates at facilities where televisions are sold at commissary ("TV Facilities").  See generally Am. Compl.  Zielinski seeks monetary relief only.  Id. at 48.

### 1. DOCCS Directive #4921 – Inmate Television Sets

Directive #4921 ("Dir. #4921"), issued in 1986, sets forth the procedure by which a DOCCS facility could be designated as a "TV Facility."  Am. Compl. at 16-17; Dkt. No. 37-6 at 11-15. Pursuant to the 1986 version of Dir. #4921, a facility could allow inmates to own personal television sets, "with the written approval of the Commissioner."  Id.

From 1986 until 2013, Glenn S. Goord ("Goord"), Thomas A. Coughlin ("Coughlin"), and Brian S. Fischer ("Fischer"), each served as Commissioner or Acting Commissioner of DOCS or DOCCS.  Am. Compl. at 39.  During their tenure, Goord, Coughlin, Fischer, and Annucci approved "one or more facilities" as TV facilities.[3]  Id. at 39-40.

Dir. #4921 was revised in 1989 and the procedure by which a facility could allow personal television sets was amended:

> Facilities may allow inmates to own television sets, subject to the following procedure:
>
> • Written permission form the Commissioner.
> • Inmates must be informed of the conditions under which televisions would be permitted.
> • The inmate population will be allowed to vote via

---

[3] In 1990, inmates at Attica Correctional Facility ("Attica C.F.") voted in favor of television ownership.  Am. Compl. at 19; Dkt. No. 37-6 at 20-25.  Coughlin, the Commissioner of DOCCS at the time, approved the vote.  Id.

4

> secret ballot.
> - • A majority vote must be received.
> - • Once voted, the results are irreversible, and all inmates at the facility will be subject to the guidelines regardless of their individual choice to own a television or not.

Am. Compl. at 17-18; Dkt. No. 37-6 at 16-19.  Defendant John Doe #1 ("Doe #1) was the

"approving authority" for the 1989 version of Dir. #4921.  Am. Compl. at 39.

The 1989 version of Dir. #4921 also included the following language:

> The receipt of all personal packages by inmates, including those containing foodstuffs from inmate family, friends, or personal packages from other sources is prohibited. Inmates may order or receive from approved manufacturer or retailer items of clothing, foodstuffs, toiletries, and other items, i.e., tape decks, musical instruments, etc., which have been approved by the facility Superintendent.
>
> Exception: An inmate, upon written request to and approval by the Superintendent, may receive two packages per year containing foodstuffs.  One package may be for his/her birthday and the second package for a religious holiday of his/her choice.  The maximum weight permitted per package is twenty pounds.

Dkt. No. 37-6 at 16.

The package restrictions applied to all inmates at TV Facilities, regardless of whether

the inmate possessed a personal television.  Am. Compl. at 12.

Dir. #4921 was amended in 2002, 2006, and 2008.  Am. Compl. at 24-27; Dkt. No. 37-6 at 39-42, 88-93.  Lucien J. Leclaire ("Leclaire") was the "approving authority" for the

2002, 2006, and 2008 versions.  Am. Compl. at 39.

Section III(A) of the 2002 version of Dir. #4921 revised the procedure by which a

facility would be designated as a TV facility:

5

> TV Election:  Where authorized, the Superintendent shall give the affected inmate population an opportunity to vote, via secret ballot, to either accept or reject the option to own personal televisions.  Prior to the election, the inmates shall be informed of the conditions for TV ownership and use, and the attendant restrictions on personal packages as set forth below.
>
> Note: The facility will be established as a "TV facility" or a "non TV facility" by majority vote.  Once established as a "TV facility," the results will not be reversed and all affected inmates at the facility will be subject to the restrictions on personal packages from then on.

Dkt. No. 37-6 at 39.

The 2002 version of Dir. #4921 included a new provision, Section III(B) entitled

"Package Restrictions":

> An inmate who has the option to own a personal television set may only receive:
>
> 1.    Two packages per calendar year (Jan. - Dec.) from family, friends, or other personal sources (these packages may only contain food items and may not exceed 20 pounds); and
>
> 2.    Items ordered directly by the inmate from approved vendors.
>
> Note: All other provisions of Directive #4911, "Packages & Articles Sent or Brought to Facilities," apply: e.g., items must be listed as approved in Section IV, will be searched for contraband, etc.

Dkt. No. 37-6 at 39.

Dir. #4921 was amended on April 16, 2013 and August 18, 2015 and approved by

Joseph Bellnier ("Bellnier").  Am. Compl. at 39; Dkt. No. 37-5 at 34-36; Dkt. No. 37-6 at

101-103.  The sections entitled "TV Election" and "Package Restrictions" remained

6

unchanged in the 2013 and 2015 versions of the directive.  Compare Dkt. No. 37-6 at 39
with Dkt. No. 37-5 at 34 and 37-6 at 101.

On February 15, 2018, James A. O'Gorman ("O'Gorman")[4], Acting Deputy
Commissioner of Facilities, issued a memorandum to all superintendents stating, in
relevant part, "[s]taff are reminded that the limits set forth in [Directive #4921] do not apply
to books, magazines, and periodicals.  Packages containing these printed materials are
not to be counted towards the two-package limit outlined in Directive #4921."  Am. Compl.
at 28; Dkt. No. 37-6 at 104.

In April 2018, Dir. #4921 was revised.  Dkt. No. 22-4 at 1-4.  The 2018 version of the
directive eliminated Sections III(A) "TV Election" and III(B) "Package Restrictions."  Am.
Compl. at 29.  Under the current version of the directive, facilities are considered TV
facilities (or not) solely by designation by the Commissioner.  Id.


### 2. DOCCS Directive #4911- Packages & Articles Sent or Brought to Facilities[5]

Pursuant to the 2014 version of Directive #4911 ("Dir. #4911"), the adaptation relevant
to the allegations herein, "[a]n inmate may receive a package through the mail from
anyone who is not on a negative correspondence or vendor list."  Am. Compl. at 6; Dkt.
No. 37-5 at 12.  An inmate could also receive a package from a commercial vendor or
from a visitor.  Am. Compl. at 6; Dkt. No. 37-5 at 13.  The 2014 version of Dir. #4911 was

---

[4] O'Gorman is not named as a defendant herein nor does plaintiff attempt to add him as a
defendant in his amended complaint.

[5] Corresponding regulations at  N.Y. COMP. CODES R. & REGS. tit. 7, § 724 incorporate Dir. #4911.
Am. Compl. at 5.

approved by Bellnier.  Dkt. No. 37-5 at 9.

Pursuant to Dir. #4911, "[p]ackages shall be searched thoroughly to ensure that all articles conform to regulations."  Am. Compl. at 10; Dkt. No. 37-5 at 10.  "Any correspondence, photos, cash or money orders included in the package will be forwarded to the appropriate area (mailroom, business office) to be processed[.]"  Id.  If a package was not permitted, and not deemed to be contraband, the directive instructed that, "the inmate must be given an opportunity to view the disallowed article and then choose a disposal option by signing a Form #2068, 'Authorization for Disposal of Personal Property.'"  Dkt. No. 37-5 at 11.

The 2014 version of Dir. #4911 incorporated, by reference, Dir. #4921 and provided:

> This directive applies to inmates housed in facilities wherein the inmate population has elected under Directive #4921, "Inmate Television Sets" to possess personal television sets; however, package privileges for such inmates are restricted (See Directive #4921 for package restrictions).

Am. Compl. at 7; Dkt. No. 37-5 at 9.

In April 2018, Dir. #4491 was revised and all references regarding package restrictions for inmates in TV facilities were removed.  Am. Compl. at 5,7,12, 29; Dkt. No. 22-5 at 1-20.

### 3.  Grievances and Lawsuits

From 2000 through 2016, inmates at Attica C.F., Great Meadow Correctional Facility

("Great Meadow C.F."), and Clinton C.F. filed grievances related to package restrictions.[6]

Am. Compl. at 12-15, 30; Dkt. No. 37-5 at 40-57, 64-69; Dkt. No. 37-6 at 2-5, 38, 43.

From 2006 through 2012, five lawsuits were filed challenging the restrictions:

- In 2006, Jimmie Allen, an inmate at Great Meadow C.F., filed a lawsuit in Albany County against Goord challenging Dir. #4921 because inmates were not informed of the conditions, under which, television sets would be permitted. Am. Compl. at 30. Allen sought a declaratory judgment prohibiting the application of the 2002 version of the directive to Great Meadow C.F. inmates. Id.

- In 2007, Shawn Green, an inmate at Great Meadow C.F., filed a § 1983 action in this Court against various defendants, including the Superintendent of Great Meadow C.F., claiming that the 2002 version of Directive #4921 was improperly applied to Great Meadow C.F. inmates. Am. Compl. at 31.

- In 2007, David Clark, an inmate at Great Meadow C.F., filed an Article 78 proceeding against Fischer challenging Dir. #4921 as "arbitrary and capricious" and claiming that his equal protection rights were violated. Am. Compl. at 32; Clark v. Fischer, 58 A.D.3d 932 (3d Dep't 2009).

- In 2012, Cedric Golston, an inmate a Clinton C.F., filed an Article 78 petition against Fischer claiming that Dir. #4921 did not require inmates to purchase items with a facility check. Am. Compl. at 34; Dkt. No. 37-6 at 107.

- In 2013, Anthony Bottom, an inmate at Attica C.F., filed an Article 78 petition against Annucci challenging Dir. #4921 and the voting procedure. Am. Compl. at 33; Bottom v. Annucci, 125 A.D.3d

---

[6] In the Amended Complaint, Zielinski identifies John Does #2 through #17 as members of the Central Office Review Committee ("CORC") who voted in 2000, 2005, 2012, and 2013 to deny grievances filed by other inmates. Am. Compl. at 2-3, 42-43.

1070 (3d Dep't 2015).   The Appellate Division dismissed the petition.  Id.

### 4.  Impact of Directives Upon Zielinski

In 1993, after an inmate vote pursuant to the 1989 version of Dir. #4921, Clinton C.F. was designated as a TV Facility.[7]  Am. Compl. at 20, 39.  On October 3, 2016, Zielinski arrived at Clinton C.F.  Id. at 37.

From October 2016 until April 2018, Zielinski was unable to receive books, magazines, and other publications from his friends and family.  Am. Compl. at 38.  On October 16, 2016, a book, entitled "The Skeptic's Annotated Bible," purchased by Zielinski, arrived at Clinton C.F.  Id. at 37.  The book was rejected and returned to Amazon because Zielinski had not paid for the book with a facility check.  Id.; Dkt. No. 37-6 at 113.

In October 2016, Zielinski filed a grievance (CL-70403-16) requesting permission for his family to order a package.  Dkt. No. 37-6 at 112.  The grievance was denied by the Superintendent, and Zielinski appealed.  Id.  In a Decision issued in October 2017, Defendants John Does #18 through 21, voting members of Central Office Review Committee ("CORC"), cited to Dir. #4921 and advised that "a third party may not purchase an item from a vendor and have it sent to a facility that permits inmates to own a personal television, regardless of who provides the money."  Id.; Am. Compl. at 43.

On January 3, 2017, a package from Pace Law School, addressed to Zielinski and designated "privileged," arrived at Clinton C.F.  Am. Compl. at 37; Dkt. No. 37-6 at 114.

---

[7] The Amended Complaint lacks facts establishing who was Commissioner at the time that Clinton C.F. became a TV Facility.

10

The package contained a book and information pertaining to Zielinski's civil rights action. Am. Compl. at 37.  The package was confiscated, renamed "non-privileged," opened, and read outside Zielinski's presence.  Id.  The correspondence was designated as "legal mail," but rejected because the address was "handwritten" and it was sent from a "commercial source."  Am. Compl. at 37; Dkt. No. 37-6 at 114.  Zielinski was advised that the correspondence must have an affixed label or stamp.  Id.  The package was destroyed.  Id.

On January 3, 2017, Zielinski filed a grievance (CL-70772-17) seeking the return of books purchased by his family.  Dkt. No. 37-6 at 115.  The Inmate Grievance Resolution Committee ("IGRC") denied the grievance, and Zielinski appealed.  Id.  In March 2018, CORC issued a decision accepting the grievance, in part, citing to the February 2018 memorandum.  Id.

On February 10, 2017, Zielinski was advised that a package containing books from "Books Through Bars" was confiscated pursuant to Dir. #4921.  Am. Compl. at 14, 38; Dkt. No. 37-5 at 74.  The package was rejected upon arrival because Zielinski could not prove that he paid for the items with a facility check.  Am. Compl. at 14, 38.  The items were returned to the sender, without being opened or inventoried.  Id.  Zielinski was not afforded the opportunity to review the package.  Id. at 38.  On February 21, 2017, Zielinski filed a grievance (CL-71092-17) claiming that the book was sent by a charitable organization that donated books to prisoners.  Dkt. No. 37-5 at 75.  Zielinski asserted that the application of Dir. #4921 was unconstitutional because "there is no way to 'order' from a charity that has no prices."  Id.  Zielinski asked for Dir. #4921 to be rescinded and for "damages."  Id.  The

11

IGRC issued a decision denying the grievance because Zielinski was "on loss of packages until 4/5/17." Dkt. No. 37-5 at 76. Zielinski appealed the decision to the Superintendent. Id. On March 30, 2017, Superintendent Michael Kirkpatrick ("Kirkpatrick")[8] issued a decision denying the grievance noting that "[t]he package in question was denied because it wasn't allowed per directive 4921." Id. at 77. Zielinski appealed the decision to CORC. Id.; Dkt. No. 37-6 at 117.

In October 2017, Zielinski was advised that a package from "Paralegal Research Assoc., Inc." was confiscated pursuant to Dir. #4921. Dkt. No. 37-5 at 89.

In March 2018, Zielinski was advised that a package from Amazon Books was confiscated pursuant to Dir. #4921. Dkt. No. 37-6 at 105.

In April 2018, Clinton C.F. implemented the new versions of the Directives and eliminated package restrictions. Am. Compl. at 29-30.

## II. Discussion[9]

Zielinski asserts claims related to the versions of the Directives that predated the April 2018 revisions. Zielinski alleges that: (1) the Directives "completely banned family, friends, attorneys, churches, charities, colleges an universities, and many other persons who have legitimate reasons and rights to do so from ever sending books, magazines, periodicals and other publications, education and art supplies, religious materials, and

---

[8] Kirkpatrick is not named as a defendant.

[9] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

other constitutionally and statutorily protected materials to inmates at TV facilities, or from purchasing them from commercial sources for delivery to such inmates" in violation of his First Amendment right to receive information and ideas; (2) defendants violated his First Amendment right to the free flow of mail when they rejected, and returned to send, books and correspondence; (3) defendants violated his Fourteenth Amendment rights to procedural due process when they seized his books and correspondence without affording him an opportunity to challenge the rejection; and (4) substantive due process claims related to the constitutionality of the Directives.[10]  See generally Am. Compl.  Annucci moves for dismissal of the claims against him arguing that Zielinski failed to allege that he was personally involved in any alleged constitutional violation.[11]  See generally Dkt. No. 22.

## A. Defendants' Motion to Dismiss

### 1. Legal Standard

When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994).  However, this "tenet . . . is inapplicable to legal conclusions[; thus, t]hreadbare recitals of the elements of a cause of

---

[10] Zielinski claims that the terms "approved vendor," "packages," and "correspondence were not adequately defined in the Directives and, thus, applied arbitrarily by DOCCS staff.  Am. Compl. at 8-9, 12.

[11] Annucci also moved to dismiss Zielinski's request for injunctive relief.  See Dkt. No. 22-1 at 6-11.  This portion of Annucci's motion is denied as moot.  In the Amended Complaint, Zielinski does not include any claim for injunctive relief.  Am. Compl. at 48.  In his Declaration and Memorandum of Law, Zielinski reaffirmed his intent to withdraw his claims for injunctive and declaratory relief.  See Dkt. Nos. 37-1 at 4; 37-2 at 8.

action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (holding that "entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . [as] courts are not bound to accept as true a legal conclusion couched as a factual allegation.")).

To defeat a motion to dismiss or a motion for judgment on the pleadings, a claim must include "facial plausibility . . . that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556 (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that, "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . .") (citations omitted).

Still, "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Twombly, 550 U.S. at 555 (citations omitted). Although a complaint attacked under the standard set forth in Rule 12(b)(6) does not require detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (citations omitted).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford

14

the non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d

471, 477 (2d Cir. 2006).  As the Second Circuit stated,

> [t]here are many cases in which we have said that a *pro se*
> litigant is entitled to special solicitude, that a *pro se* litigant's
> submissions must be construed liberally, and that such
> submissions must be read to raise the strongest arguments
> that they suggest.  At the same time, our cases have also
> indicated that we cannot read into *pro se* submissions claims
> that are not consistent with the *pro se* litigant's allegations or
> arguments that the submissions themselves do not suggest
> that we should not excuse frivolous or vexatious filings by *pro
> se* litigants, and that *pro se* status does not exempt a party
> from compliance with relevant rules of procedural and
> substantive law . . . .

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff

v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008) ("On occasions too

numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds

*pro se*, . . . a court is obliged to construe his pleadings liberally.") (internal citations

omitted).


## 2. Personal Involvement

Annucci argues that Zielinski has not pleaded facts suggesting that he was

personally involved or subjectively aware of any constitutional violations related to

DOCCS' directives and Zielinski's packages.  Dkt. No. 22-1 at 6.  "[P]ersonal

involvement of defendants in alleged constitutional deprivations is a prerequisite to an

award of damages under § 1983."  Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)

(quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).  Thus,

15

supervisory officials may not be held liable merely because they held a position of

authority.  Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).  However, supervisory

personnel may be considered "personally involved" if:

> (1) [T]he defendant participated directly in the
> alleged constitutional violation;
>
> (2) the defendant, after being informed of the
> violation through a report or appeal, failed to
> remedy the wrong;
>
> (3) the defendant created a policy or custom under
> which unconstitutional practices occurred, or
> allowed the continuance of such a policy or custom;
>
> (4) the defendant was grossly negligent in
> supervising subordinates who committed the
> wrongful acts; or
>
> (5) the defendant exhibited deliberate indifference
> to the rights of inmates by failing to act on
> information indicating that unconstitutional acts
> were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319,

323–24 (2d Cir. 1986)).[12]  Assertions of personal involvement that are merely speculative

are insufficient to establish a triable issue of fact.  See e.g., Brown v. Artus, 647 F. Supp.

2d 190, 200 (N.D.N.Y. 2009).

Zielinski relies upon the third and fifth Colon factors and claims that Annucci

---

[12] Various courts in the Second Circuit have postulated how, if at all, the Iqbal decision has affected the five Colon factors which were traditionally used to determine personal involvement.  Pearce v. Estate of Longo, 766 F.Supp.2d 367, 376 (N.D.N.Y. 2011), rev'd in part on other grounds sub nom., Pearce v. Labella, 473 F. App'x 16 (2d Cir. 2012) (summary order) (recognizing that several district courts in the Second Circuit have debated Iqbal's impact on the five Colon factors); Kleehammer v. Monroe Cnty., 743 F.Supp.2d 175, 182 (W.D.N.Y.2010) (holding that "[o]nly the first and part of the third Colon categories pass Iqbal's muster ...."); D'Olimpio v. Crisafi, 718 F.Supp.2d 340, 347 (S.D.N.Y. 2010) (disagreeing that Iqbal eliminated Colon's personal involvement standard).

created, or allowed to continue, the policy and custom under which Zielinski's constitutional rights were violated and acted with deliberate indifference to Zielinski's rights after receiving information, through prior lawsuits, that unconstitutional violations were occurring.

### a. Third <u>Colon</u> Factor

Zielinski alleges that Annucci "created or allowed to continue the policy and custom under which the violations of Plaintiff's rights occurred." Am. Compl. at 40. Zielinski claims that, pursuant to Dir. #4921, Annucci's approval was required before a facility could be designated as a "TV facility." Id. at 39-40. Although Zielinski summarily alleges that Annucci "approved one or more facilities becoming TV facilities[,]" the Amended Complaint lacks facts suggesting that Annucci was personally involved in approving Clinton C.F.'s designation as a TV facility. Id. at 40. Thus, Zielinski cannot establish Annucci's personal involvement based on his implementation of Dir. #4921.

Zielinski also contends, "the Bureau of Internal Controls conducts a review of all DOCCS directives, rules and regulations with the Commissioner [. . .] and determinations are made by such staff whether to create, continue, modify, or eliminate each directive, rule and regulation." Am. Compl. at 40. Zielinski claims that Annucci participated in such annual reviews "numerous times" and allowed Dir. #4911 and #4921 to remain in "full force and effect"; Zielinski annexed several versions of the directives as exhibits to the amended pleading. Id. Moreover, Zielinski proffers a February 15, 2018 memorandum from non-party James A. O'Gorman establishing that Dir. #4921 and Dir. #4911 were still

17

in effect after Annucci assumed the role of Acting Commissioner.  See Dkt. Np. 37-6 at 104.

Viewing the facts in the light most favorable to plaintiff, at this early stage in the litigation, the undersigned finds that Zielinski has alleged a plausible claim that Annucci allowed the continuance of a policy or custom under which unconstitutional practices occurred.  See Selah v. Fischer, No. 9:09-CV-1363 (GLS/DEP), 2013 WL 5603866, at *2 (N.D.N.Y. Oct. 11, 2013) (denying the defendants' motion for judgment on the pleadings because the plaintiff alleged, consistent with Colon, that the Commissioner was responsible for promulgating DOCCS' rules, directives, regulations, and policies that infringed upon his right to practice his chosen religion); see also Lloyd v. City of New York, 43 F. Supp. 3d 254, 268-69 (S.D.N.Y. 2014) (denying the defendants' motion to dismiss because the plaintiffs sufficiently alleged, under the third Colon factor, that the defendant was "ultimately responsible for the establishment and maintenance of policies and practices relating to religious programming and facilities at [Rikers Island]."); Rossi v. Fishcer, No. 13-CV-3167, 2015 WL 769551, at *16 (S.D.N.Y. Feb. 24, 2015) (finding that the plaintiff plausibly alleged that the Commissioner was involved in creating policies under which his right to free exercise was substantially burdened); Jean-Laurent v. Wilkerson, 438 F. Supp. 2d 318, 326 (S.D.N.Y. 2006) aff'd, 461 F. App'x 18 (2d Cir. 2012) (summary order) (finding that the allegation that the defendant "expressly authorized" officers to "maintain a custom practice that authorized the use of force against inmates without just cause" was sufficient to survive a motion to dismiss); Adams v. Annucci, No. 17-CV-3794, 2018 WL 4608216, at *4 (S.D.N.Y. Sept. 25, 2018) ("Although the Complaint

18

could provide more details, it is a reasonable inference that a policy implementing a treatment program across DOCCS facilities was either created or implemented by the DOC[CS] Commissioner, as [t]hese are the kinds of policy decisions that one expects might fall within his . . . purview.") (citation and internal quotation marks omitted).

Accordingly, construing Zielinski's Amended Complaint liberally and accepting all factual allegations in the Amended Complaint as true, the undersigned concludes that Zielinski has sufficiently alleged personal involvement on the part of Annucci based upon the third Colon factor.

### b. Fifth Colon Factor

Even assuming that Zielinski failed to plead Annucci's personal involvement under the third Colon factor, Zielinski also asserts that Annucci was personally involved under the fifth Colon factor; i.e., Annucci was deliberately indifferent when he failed to act upon information that constitutional violations were occurring.  See Colon, 58 F.3d at 873.

"[A] supervisor may be found liable for his deliberate indifference to the rights of others by his failure to act on information indicating unconstitutional acts were occurring . . . provided that the plaintiff can show an affirmative causal link between the supervisor's inaction and [the plaintiff's] injury."  Poe v. Leonard, 282 F.3d 123, 140 (2d Cir. 2002). Moreover, "[t]he personal involvement and liability of supervisory personnel is established when the supervisory official has actual or constructive notice of unconstitutional practices and demonstrates . . . deliberate indifference by failing to act."  Rahman v. Fisher, 607 F. Supp. 2d 580, 586 (S.D.N.Y. 2009) (citation and internal quotation marks omitted).

19

Zielinski claims that Annucci was aware of the constitutional issues related to Dir. #4921 due to civil actions and Article 78 proceedings related to "the existence and lawfulness of the package restrictions imposed by Directives #4911 and #4921 on inmates at TV facilities." Am. Compl. at 40. Zielinski cites to five lawsuits filed between 2006 and 2013 by inmates at Great Meadow C.F. and Clinton C.F., challenging the constitutionality of Dir. #4921 and Dir. #4911. The Amended Complaint contains the titles of the lawsuits, case numbers, and a summary of the claims. Zielinski alleges that Annucci was aware of the <u>Bottom</u> action because he was personally named as a defendant. <u>Id.</u> at 35. Zielinski claims that Annucci had "actual knowledge" of the <u>Golston</u> action because Annucci assumed the duties of Commissioner from Fischer while the matter was pending.[13] <u>Id.</u> at 42. As to the remaining actions, Zielinski asserts that Annucci was DOCCS' Counsel or Deputy Commissioner at the time the lawsuits were filed and therefore, "had the duty to familiarize himself with the allegations made in court, and with the underlying policies and customs being challenged." <u>Id.</u> at 41.

Although Annucci reasons that Zielinski's argument is "unavailing" because he "is named as a defendant in more than one thousand (1,000) New York State and federal district court cases," <u>see</u> Dkt. No. 40 at 5, at this juncture, drawing all reasonable inferences in Zielinski's favor as the nonmoving party, construing the Amended Complaint liberally under the special solicitude due to the <u>pro se</u> plaintiff, and out of an abundance of caution, the undersigned declines to adopt Annucci's contention. Arguably, it can be said

---

[13] On May 1, 2013, Annucci assumed the duties of Commissioner from Fischer. Am. Compl. at 42; Dkt. No. 22-1 at 7, n. 3.

that Annucci "knew or should have known that there was a high degree of risk" of potentially unconstitutional conduct regarding the DOCCS Directives at issue.  See Poe, 282 F.3d at 142; Shepherd v. Powers, No. 11 Civ. 6860(LTS)(RLE), 2012 WL 4477241, at *11 (S.D.N.Y. Sept. 27, 2012) ("It also alleges that Cheverko 'held several positions with the responsibility of supervising, investigating and/or overseeing WCJ's Emergency Response Team', that Amicucci was the Warden of WCJ (and thus vested with supervisory control), and that both 'knew or but for their deliberate indifference should have known of ERT's custom and practice of use of excessive force, but failed to correct same through training, supervision or discipline due to their grossly negligent, reckless or intentional conduct.'  These allegations fit squarely within the fourth and fifth Colon categories.").   Therefore, the undersigned concludes that has sufficiently stated a claim under the fifth Colon factor to survive Annucci's motion to dismiss.

Accordingly, it is recommended that Annucci's Motion to Dismiss be denied.

## B. Plaintiff's Cross-Motion for Leave to Amend

### 1. Legal Standard

The Federal Rules of Civil Procedure ("Fed. R. Civ. P.") provide that courts "should freely give leave" to amend a complaint "when justice so requires."  FED. R. CIV. P. 15(a)(2). "The court plainly has discretion [ ] to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant."  Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990).

21

> In determining what constitutes "prejudice", [the Court is to] consider whether assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.

Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993) (citations omitted).  If the amendment proposed by the moving party is futile, "it is not an abuse of discretion to deny leave to amend."  Eldridge v. Rochester City Sch. Dist., 968 F. Supp. 2d 546, 553 (W.D.N.Y. 2013) (citing Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993)). The determination of whether a proposed amendment is futile is made under the same standard as that used to determine whether a claim would be subject to a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  See id.  To avoid dismissal, the proposed amendment must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  If the underlying facts or circumstances relied upon by the party seeking leave to amend may be a proper subject of relief, the party should be afforded the opportunity to test the claim on its merits.  See U.S. ex rel. Maritime Admin. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi., 889 F.2d 1248, 1254 (2d Cir. 1989).  The decision to grant or deny a motion to amend is committed to the sound discretion of the trial court and the court's decision is not subject to review on appeal except for abuse of discretion.  See Nettis v. Levitt, 241 F.3d 186, 192 (2d Cir. 2001).

If an amendment seeks to add a party, Rule 21 of the Federal Rules of Civil Procedure, which allows addition of a party "at any time, on just terms," also applies.  FED.

R. CIV. P. 21.  However, the "showing necessary under Rule 21 is the same as that required under Rule 15(a)."  Johnson v. Bryson, 851 F. Supp. 2d 688, 703 (S.D.N.Y. 2012); Soler v. G & U, Inc., 86 F.R.D. 524, 528 (S.D.N.Y. 1980) (noting that courts apply "'the same standard of liberality afforded to motions to amend pleadings under Rule 15.'") (quoting Fair Hous. Dev. Fund Corp. v. Burke, 55 F.R.D. 414, 419 (E.D.N.Y. 1972)).

### 2. Analysis[14]

As discussed supra, Zielinski seeks to add new defendants:  Fischer, Coughlin, Goord, Bellnier, Leclaire, and John Does #1 through #21.  See generally Am. Compl. With the amended pleading, Zielinski also seeks to include a new First Amendment claim against the aforementioned defendants, and Annucci, for violations of his First Amendment right to receive information.  See id.

### a. Class Action

Insofar as the Amended Complaint or attached documents and exhibits attempt to raise any claims on behalf of "all individuals presently or previously confined in DOCS or DOCCS custody at any TV facility," see Am. Compl. at 3-4, the motion is denied as futile. As previously set forth in the January Order, Zielinski, as a pro se plaintiff, cannot bring any claims on behalf of any other plaintiff.  Dkt. No. 10 at 8-9.  Thus, Zielinski cannot, in

---

[14] The Amended Complaint includes exhibits.  See Dkt. No. 37-4 through 37-6.  To the extent that the exhibits are relevant to the incidents described in the Amended Complaint, the Court will consider the Amended Complaint as well as any documents attached as exhibits.  See Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

the Amended Complaint, again attempt to raise claims on the behalf of other plaintiffs. Accordingly, for the reasons previously articulated, this amendment would be futile, and Zielinksi's motion, on this ground, is denied.

### b. Prior Claims Against Annucci

As discussed supra, the First and Fourteenth Amendment claims previously pleaded are repeated in the Amended Complaint, see Am. Compl. at 46-48, and survive the motion to dismiss. See subsection II.A supra, at 13-21. Thus, Zielinski's motion on this ground is granted.

### c. First Amendment Claims related to Information and Ideas

In the Amended Complaint, Zielinski asserts a new claim for violations of his First Amendment right to receive information and ideas. Am. Compl. at 45. "That inmates have a First Amendment right to access to publications consistent with prison security is clearly established." Allen v. Coughlin, 64 F.3d 77, 81 (2d Cir. 1995) (citation omitted). "The prohibition of virtually all reading materials deprives the inmates of their First Amendment right to receive information and ideas." Parnell v. Waldrep, 511 F. Supp. 764, 768 (W.D.N.C. 1981). The decision to bar controversial publications from correctional facilities impacts "not only the interests of prison inmates which are at stake. The one who sends literature also has a fundamental interest in the inmate's access to the information in the published material." Jackson v. Ward, 458 F. Supp. 546, 556 (W.D.N.Y. 1978) (citation omitted).

Here, Zielinski alleges that from October 3, 2016 until April 6, 2018, the Directives

prohibited him from "receiving any books, magazines, periodicals, or other publications unless they were not free or donated and had been purchased by him from 'approved vendors' using a facility check drawn on his inmate account[.]"  Am. Compl. at 45.  At this juncture, Zielinski has adequately plead a First Amendment claim related to the right to receive information to require a response.  See Rhem v. Malcolm, 371 F. Supp. 594, 634 (S.D.N.Y.), supplemented, 377 F. Supp. 995 (S.D.N.Y. 1974), aff'd and remanded, 507 F.2d 333 (2d Cir. 1974) (finding rule that prevented receipt of any publication except those sent directly by the publisher violated the First Amendment and imposed a "significant hardship on inmates, most of whom are poor, by requiring them to buy books and magazines which they could otherwise receive without cost from friends or relatives"); see Bethel v. Jenkins, No. 16-4185, 2017 WL 4863118, at *3 (6th Cir. Sept. 22, 2017) (denying motion to dismiss claim that prison policy banning all third-party orders, even those from approved vendors violated inmate's First Amendment rights); see also Surdyke v. Crawford, No. 4:05-CV-784, 2006 WL 1520649, at *4 (E.D. Mo. May 31, 2006) (allowing the plaintiff to proceed with First Amendment claim that his right to receive information and ideas was violated when he was denied the receipt of a book without a penological interest).  Accordingly, Zielinski's motion on this ground is granted.


### d. Claims against Bellnier

Relying upon the third Colon factor, Zielinski claims that Bellnier was personally involved in violations of Plaintiff's constitutional rights because Bellnier approved the 2013 and 2015 versions of Dir. #4921; these versions of the Directive "ultimately cause[d] the deprivations Plaintiff was subject to."  Am. Compl. at 39.  Zielinski attached the 2013 and

2015 versions of Dir. #4921 as exhibits to the Amended Complaint. Dkt. No. 37-5 at 34;
Dkt. No. 37-6 at 101.  Drawing all reasonable inferences in Zielinski's favor and construing
the Amended Complaint liberally under the special solicitude due to the pro se plaintiff, the
Court finds that, that this early stage in the litigation, Zielinski has sufficiently alleged that
Bellnier was personally involved in the constitutional deprivations.  See Amaker v. Fischer,
No. 10-CV-88, 2016 WL 6778782, at *4 (W.D.N.Y. Nov. 16, 2016) (allowing the plaintiff to
proceed with claim against LeClaire because, as the "Approving Authority" of the directive,
which was annexed, was sufficient evidence of LeClaire's personal involvement in the
implementation of an allegedly unconstitutional policy as to preclude their dismissal from
this action).  Accordingly, Zielinski's motion is granted on this ground.


### e. Claims Against John Does #2 through #21

Under the second Colon factor, failure to remedy a wrong of which the defendant
was aware, see Colon, 58 F.3d at 873, Zielinski alleges that John Does #2 through #21, in
their roles as members of CORC, failed to take remedial measures after being informed of
alleged constitutional violations.  See Am. Compl. at 42-43.

"[I]t is well-established that the review, denial or affirmance of a denial of a
grievance is insufficient to establish personal involvement."  Perilla v. Fischer, No.
13-CV-398M, 2013 WL 5798557, at *7 (W.D.N.Y. Oct. 28, 2013) (citing inter alia Farrell v.
Burke, 449 F.3d 470, 484 (2d Cir. 2006)).  "[W]hile personal involvement cannot be
founded solely on supervision, liability can be found if the official proactively participated in
reviewing the administrative appeals as opposed merely to rubber-stamping the results."

Molano v. Bezio, 42 F. Supp. 3d 465M 471 (W.D.N.Y. Apr. 13, 2012) (citing Collins v. Ferguson, 804 F. Supp. 2d 134, 140 (W.D.N.Y. 2011)).

Zielinski alleges that John Does #2 through #17, voting members of CORC, were personally involved in the constitutional deprivations because they denied grievances filed in 2000, 2005, 2012, and 2013, by inmates other than Zielinski, related to the TV facility package restrictions.  Am. Compl. at 42-43.   As presently pleaded, the Amended Complaint lacks any facts suggesting that John Does #2 through #17 personally investigated any allegations or grievances filed by Zielinski.

Zielinski also alleges that John Does #18 through #21, voting members of CORC, denied his 2016 grievance, # CL-70403-16, related to a package ordered by his family and "perpetuated the policy and custom under which the violations of Plaintiff's rights occurred."  Am. Compl. at 43; Dkt. No. 37-6 at 112.  Without more, allegations that members of CORC reviewed and affirmed the Superintendent's denial of a grievances are insufficient to establish personal involvement.  See Gomez v. Sepiol, No. 11-CV-1017SR, 2014 WL 1575872, at *10 (W.D.N.Y. Apr. 11, 2014) (noting that review of a grievance pursuant to DOCCS' grievance mechanism is insufficient to establish personal involvement; see also Wright v. Stallone, No. 9:17-CV-0487 (LEK/TWD), 2018 WL 671256, at *8 (N.D.N.Y. Jan. 31, 2018) (holding that members of CORC who denied appeals were "tasked only with reviewing an administrative determination" and thus, "not 'personally involved' even if the underlying determination implicates a plaintiff's constitutional rights.") (citations omitted).

Accordingly, Zielinski's motion, insofar as it seeks to include First and Fourteenth

27

Amendment claims against John Does #2 through #21, is denied as futile.

### f. Claims Against Doe #1, Leclaire, Goord, Fischer, and Coughlin

The Amended Complaint contains several references to Doe #1, Leclaire, Goord, Fischer, and Coughlin, but Zielinski does not claim that these defendants personally participated in constitutional violations.  See generally Am. Compl.  Rather, Zielinski relies upon the third and fifth Colon factors as a basis of personal involvement.  See id. at 39-40.

John Doe #1 is identified as the "approving authority" for the 1989 version of Directive 4921 (which was in effect when Clinton C.F. became a TV facility).  Am. Compl. at 39.  Leclaire is identified as the "approving authority" on four subsequent versions of the Directive, in effect from 2002 until 2008.  Id.  Although these defendants approved versions of Dir. #4921, Zielinski alleges that the 2013 version of Dir. #4921 supplanted and superseded the prior versions.  Id. at 16-18, 24-29.  Thus, the 1989 and 2002 directives were not in effect at the time of Zielinski's confinement at Clinton C.F. or the alleged constitutional violations.  See id.  Moreover, Zielinski has not pleaded that John Doe #1 or Leclaire were employed by DOCCS at the time of the alleged violations of Zielinski's constitutional rights or at any time during Zielinski's incarceration.  Thus, Zielinski has not sufficiently pleaded that John Doe #1 and LeClaire were personally involved in the alleged constitutional violations.  See e.g., Ajala v. West, No. 13-CV-545, 2014 WL 7338782, at *3 (W.D. Wis. Dec. 22, 2014) (holding that because the defendants were no longer employed by the Department of Corrections, "it seems highly unlikely that any of them would have the authority to change the policy at issue.").

As to Goord, Fischer, and Coughlin, Zielinski identifies these individuals in the Amended Complaint as "Former Commissioners."  Am. Compl. at 2, 39-40.  As discussed supra, to establish liability against a supervisory defendant based upon deliberate indifference, the plaintiff must allege "an affirmative causal link between the supervisor's inaction and [the plaintiff's] injury" and "actual or constructive notice of unconstitutional practices[.]"  See subsection II.B.2.b supra.   Here, Zielinski summarily alleges that Goord, Fischer, and Coughlin approved "one or more facilities" as TV facilities.  See Am. Compl. at 39-40.   However, the Amended Complaint lacks any facts connecting Goord, Fischer, and Coughlin to the constitutional deprivations allegedly suffered by Zielinski while he was housed at Clinton C.F.[15]  Moreover, Zielinski has not alleged that the aforementioned defendants were still employed by DOCCS at the time of the alleged violations of his constitutional rights or at any time during his incarceration.  See Barnes v. Fischer, No. 9:11-CV-0583 (NAM/DEP), 2013 WL 7044935, at *18 (N.D.N.Y. Sept. 30, 2013), report and recommendation adopted in part pertinent part, 2014 WL 201442 (N.D.N.Y. Jan. 17, 2014) (finding that the defendants were not employed by the DOCCS at the time of the allegations giving rise to the claims against them and thus, "no reasonable factfinder could conclude that they were personally involved in the asserted constitutional violation.").

Thus, Zielinski's motion to amend the pleading to include First and Fourteenth Amendment claims against Doe #1, LeClaire, Goord, Fischer, and Coughlin, is denied as futile.

---

[15] Zielinski claims that Coughlin approved the inmate vote at Attica C.F.  Am. Compl. at 39-40. However, Zielinski has not pleaded that he was confined at Attica C.F.

Accordingly, plaintiff's motion for leave to amend his complaint is granted in part and denied in part.

### III. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**RECOMMENDED**, that defendant's Motion to Dismiss (Dkt. No. 22) pursuant to Fed. R. Civ. P. 12(b)(6) be **DENIED**; and it is

**ORDERED**, that Zielinski's Cross-Motion for Leave to Amend (Dkt. No. 37) be **GRANTED in part and DENIED in part:** Zielinski's Cross-Motion for Leave to Amend his Complaint to (1) institute a class action, and (2) add First and Fourteenth Amendment claims against John Does #2 through #21, Doe #1, Leclaire, Goord, Fischer, and Coughlin is **denied as futile** and these claims and defendants are stricken from the Amended Complaint; Zielinski's Cross-Motion for Leave to Amend is **GRANTED** in all other respects; and it is further

**ORDERED**, that the Clerk shall file the Proposed Amended Complaint (Dkt. No. 37-3), together with the supporting Exhibits (Dkt. Nos. 37-5, 37-6), as the Amended Complaint in this action, and it shall be deemed the operative pleading, minus the claims that have been stricken; and it is further

**ORDERED**, that the Clerk shall revise the docket to reflect that Joseph Bellnier is a defendant in this action; and it is further

**ORDERED**, that upon receipt from Zielinski of the documents required for service, the Clerk shall issue Amended Summonses and forward them to the U.S. Marshal for

service on the additional defendant; and it is further

      **ORDERED**, that a response to Plaintiff's Amended Complaint shall be filed by defendants, or their counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

      **ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on the parties in accordance with Local Rules.

**IT IS SO ORDERED**.

      Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).[16]

Dated: January 8, 2019
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[16] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections.  FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Id. § 6(a)(1)(C).