**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

JEREMY ZIELINSKI,

                              Plaintiff,

            v.                                                No. 9:17-CV-1087
                                                              (GTS/CFH)
ANTHONY J. ANNUCCI and
JOSEPH BELLNIER,

                              Defendants.

_____

**APPEARANCES:**                          **OF COUNSEL:**

JEREMY ZIELINSKI
16-A-3601
Plaintiff, pro se
Auburn Correctional Facility
P.O. Box 618
Auburn, New York 13021

HON. LETITIA JAMES                      Christopher Liberati-Conant, Esq.
Attorney General for the                Assistant Attorney General
State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

    Plaintiff pro se Jeremy Zielinski ("Plaintiff" or "Zielinski"), an inmate who was, at all

relevant times, in the custody of the New York Department of Corrections and Community

Supervision ("DOCCS"), brings this action pursuant to the Civil Rights Act, 42 U.S.C. §

1983.  See Dkt. No. 48 ("Am. Compl.").  Zielinski contends that Defendants Anthony J.

---

    [1]  This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C.
§ 636(b) and N.D.N.Y.L.R. 72.3(c).

Annucci ("Annucci") and Joseph Bellnier ("Bellnier") deprived him of his constitutional rights

under the First and Fourteenth Amendments.  See id.  Presently before the Court is

Plaintiff's motion for summary judgment.  See Dkt. No. 96.  Defendants' opposed the motion

and cross-moved for summary judgment.  See Dkt. No. 104.  Zielinski opposed the cross

motion.  See Dkt. No. 110.  For the following reasons, it is recommended that Plaintiff's

motion be denied and that Defendants' cross motion be granted, in part.


## I.  BACKGROUND

### A.  Undisputed Facts[2]

---

[2]  In support of the motions, the parties submitted Statements of Material Facts and responses
thereto.  Dkt. No. 96-1; Dkt. No. 104-1; Dkt. No. 110.  Local Rule 7.1(a)(3) states:

> Summary Judgment Motions
>
> Any motion for summary judgment shall contain a Statement of Material Facts. The
> Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about
> which the moving party contends there exists no genuine issue. Each fact listed shall set
> forth a specific citation to the record where the fact is established. The record for purposes of
> the Statement of Material Facts includes the pleadings, depositions, answers to
> interrogatories, admissions and affidavits.
>
> The opposing party shall file a response to the Statement of Material Facts. The
> non-movant's response shall mirror the movant's Statement of Material Facts by admitting
> and/or denying each of the movant's assertions in matching numbered paragraphs. Each
> denial shall set forth a specific citation to the record where the factual issue arises. The
> non-movant's response may also set forth any additional material facts that the non-movant
> contends are in dispute. Any facts set forth in the Statement of Material Facts shall be
> deemed admitted unless specifically controverted by the opposing party.

N.D.N.Y. L.R. 7.1(a)(3).

      In further support of the motions, the parties annexed exhibits.  See Dkt. No. 96-3, Dkt. No.
96-4; Dkt. No. 104-3 -104-7.  Zielinski also relies upon and references documents annexed as exhibits to his
Amended Complaint.  See Dkt. No. 96-1 at 7.  The parties have not objected to the authenticity of any
document referenced. Therefore, the undersigned will consider the documents in the context of the within
motions.  See United States v. Painting known as Hannibal, No. 07-CV-1511 (RJS), 2010 WL 2102484, at *1
n.2 (S.D.N.Y. May 18, 2010) (citing Daniel v. Unum Provident Corp., 261 F. App'x 316, 319 (2d Cir. 2008)
(summary order) ("[A] party is not required to authenticate documents on a summary judgment motion where,
as here, authenticity is not challenged by the other party.")).

Annucci has been employed as Acting Commissioner for DOCCS since May 2013.  See Dkt. No. 104-2.  From November 2011, until September 2017, Bellnier was employed as DOCCS Deputy Commissioner for Correctional Facilities.  See Dkt. No. 104-8.

### 1. DOCCS Directive #4911- Packages & Articles Sent or Brought to Facilities

Directive #4911 ("Dir. #4911") established DOCCS' policy related to packages sent or brought to facilities including new or used books, magazines, and periodicals.  See Dkt. No. 104-4; Att. A(F)(3).  The directive provided that, "[a]n inmate may receive a package through the mail from anyone who is not on a negative correspondence or vendor list."  Id. at III(D)(1)(a).  If a package is received from a commercial vendor, it "must bear the return address as affixed or printed (not handwritten) by the vendor.  Id. at III(D)(1)(c).  The directive further provided, "[p]ackages shall be searched thoroughly to ensure that all articles conform to regulations."  Id. at III(B)(1).  Additionally, "[a]ny correspondence . . . included in the package will be forwarded to the appropriate area in accordance with Dir. #4422[.]"[3]  See Dkt. No. 104-4 at III(B)(3).  If a package was not permitted, and not deemed to be contraband, the directive instructed that the inmate must be "given the opportunity to view the disallowed article and then choose a disposal option by signing Form #2068, 'Authorization for Disposal of Personal Property.'"  See id. 104-4 at III(B)(6)(b).

The 2014 version of Dir. #4911 was approved by Bellnier and was in effect at the relevant time.  See Dkt. No. 48-1 at 9; Dkt. No. 104-1 at ¶ 2; Dkt. No. 104-2 at ¶ 8.  Annucci had the authority to repeal any provision of Dir. #4911.  See Dkt. No. 96-3 at 38, ¶¶ 71-72.

---

[3] Dir. #4422 provided the polices governing inmate correspondence.  Dkt. No. 104-4 at 2.

### 2. DOCCS Directive #4921 - Inmate Television Sets

Directive #4921 ("Dir. #4921"), issued in 1986, set forth the guidelines governing the acquisition, use, and disposition of inmate television sets. <u>See</u> Am. Compl. at ¶ 52; Dkt. No. 48-2 at 11-15. The directive provided:

> II. <u>POLICY</u>
>
> Facilities, with the written approval of the Commissioner, may allow individual inmates to own a television set. The receipt of all personal packages by inmates, including those containing foodstuffs from inmate family, friends, or personal packages from other sources is prohibited. Inmates may order and receive from approved manufacturer or retailer items of clothing, foodstuffs, toiletries, and any other items, i.e., tape decks, musical instrument, etc., which have been approved by the facility Superintendent.
>
> Exception: An inmate, upon written request to and approval by the Superintendent, may receive two packages per year containing foodstuffs. One package may be for his/her birthday and the second package for a religious holiday of his/her choice. The maximum weight permitted per package is twenty pounds.

Dkt. No. 48-2 at 15. Dir. #4921 was revised in 1989 and the procedure by which a facility could allow personal television sets was amended, but the provisions regarding the receipt of personal packages remained unchanged. <u>See</u> <u>id.</u> at 16-19.

In 2002, Dir. #4921 was amended and included two additional provisions set forth in Section III. <u>See</u> Dkt. No. 48-2 at 39-43. Section III revised the procedure by which a facility would be designated as a "TV facility" and provided further information related to package restrictions:

> III.    PROCEDURE
>
> A.    <u>TV Election</u>. Where authorized, the Superintendent shall give the affected inmate population an

4

opportunity to vote, via secret ballot, to either accept or reject the option to own personal televisions. Prior to the election, the inmates shall be informed of the conditions for TV ownership and use, and the attendant restrictions on personal packages as set forth below.

Note: The facility will be established as a "TV facility" or a "non TV facility" by majority vote. Once established as a "TV facility," the results will not be reversed and all affected inmates at the facility will be subject to the restrictions on personal packages from then on.

B.    <u>Package Restrictions</u>. An inmate who has the option to own a personal television set may only receive:

1.    two packages per calendar year (Jan. - Dec.) from family, friends, or other personal sources (these packages may only contain food items and may not exceed 20 pounds); and

2.    items ordered directly by the inmate from approved vendors.

Note: All other provisions of Directive #4911[4], "Packages & Articles Sent or Brought to Facilities," apply: e.g., items must be listed as approved in Section IV, will be searched for contraband, etc.

Dkt. No. 48-2 at 39. The package restrictions applied to all inmates at TV Facilities, regardless of whether the inmate possessed a personal television. <u>See</u> Am. Compl. at ¶ 35.

Dir. #4921 was amended in 2006, 2008, 2013, and 2015. <u>See</u> Dkt. No. 48-2 at 88-90,

---

[4]    The 2014 version of Dir. #4911 incorporated, by reference, Dir. #4921 and provided:

This directive applies to inmates housed in facilities wherein the inmate population has elected under Directive #4921, "Inmate Television Sets" to possess personal television sets; however, package privileges for such inmates are restricted (see Directive #4921 for package restrictions).

Dkt. No. 104-4 at 1.

91-93, 101-103; Dkt. No. 104-6.  The sections entitled "TV Election" and "Package

Restrictions" remained unchanged in the amended versions.  See Dkt. No. 48-2 at 39; Dkt.

No. 48-2 at 88-90, 91-93, 101-103; Dkt. No. 104-6.  The 2015 version of Dir. #4921, in effect

at the relevant time, was approved by Annucci and Bellnier.  See Dkt. No. 96-3 at 37, ¶ 67;

Dkt. No. 104-1 at ¶¶ 60, 63-65; Dkt. No. 104-2 at ¶¶ 9, 10; Dkt. No. 104-10 at 4.  Annucci

delegated the day-to-day enforcement of Dir. #4921 to his deputy commissioners and facility

superintendents.  See Dkt. No. 104-1 at ¶ 8; Dkt. No. 110 at ¶ 4.  Annucci had the authority

to repeal any provision of Dir. #4921.  See Dkt. No. 96-3 at 38, ¶¶ 71-72.

On February 15, 2018, James A. O'Gorman ("O'Gorman"),[5] Acting Deputy

Commissioner of Facilities, issued a memorandum to all superintendents stating, in relevant

part, "[s]taff are reminded that the limits set forth in [Directive #4921] do not apply to books,

magazines, and periodicals.  Packages containing these printed materials are not to be

counted towards the two-package limit outlined in Directive #4921."  Dkt. No. 104-7.  In April

2018, Dir. #4921 was revised.  See Dkt. No. 48-1 at 30-33.  The 2018 version eliminated

Section III(A) "TV Election" and Section III(B) "Package Restrictions."   Id.


### 3.  Facts Related to Zielinski

On October 3, 2016, Zielinski arrived at Clinton Correctional Facility ("Clinton C.F.").

See Am. Compl. at ¶ 107.  At that time, Clinton C.F. was designated a "TV facility."  Dkt. No.

96-3 at 22, ¶ 9.

### a.  Packages, Books, and Publications

---

[5]    O'Gorman is not named as a defendant in this action.

On October 16, 2016, a package arrived at Clinton C.F. addressed to Zielinski containing a book entitled "The Skeptic's Annotated Bible".  Dkt. No. 96-3 at 23, ¶15; Dkt. No. 96-4 at 20, 64-65.  The book was purchased from Amazon[6] by Zielinski's mother, at his request, because Zielinski did not have access to the internet.  See Dkt. No. 96-1 at ¶ 84; Dkt. No. 96-4 at 64-65, 89-90.  A Clinton C.F. Package Room employee prepared a "Non-Food Package Record" (Form 1755F) and noted "4921" in the column marked "REC'D BY."  Dkt. No. 48-2 at 113; Dkt. No. 96-3 at 24, ¶ 19.  The book was not delivered to Zielinski and was returned to Amazon.[7]  See Dkt. No. 96-3 at 23-24, ¶¶ 16-17.

In October 2016, Zielinski sent a letter to Pace Law School seeking general information on the rights of people outside of prisons to send correspondence and publications to inmates.  See Dkt. No. 96-4 at 72-73.  Zielinski did not send any payment to Pace.  See id.  In early January 2017, a package arrived at Clinton C.F. from Pace Law School, addressed to Zielinski.  See Dkt. No. 96-3 at 29, ¶ 36.  The package was initially opened in the correspondence office and subsequently forwarded to the package room.  See id. at 29-30, ¶¶ 37, 39; Dkt. No. 48-2 at 113, 114.  A Clinton C.F. Package Room employee prepared a form entitled "Authorization For Disposal of Personal Property" and included the following notations for "Article/Bag":  "Legal Mail," "1 Book," "(Opened by Correspondence)," and "Pace Law School."  Dkt. No. 96-3 at 29, ¶ 38; Dkt. No. 48-2 at 114.  In the portion of the form related to "Reason not permitted," the employee included: "handwritten address" and "must have an affixed label or stamp."  Dkt. No. 96-3 at 30, ¶ 41; Dkt. No. 48-2 at 114.

---

[6]  Amazon is not on the "disapproved vendor list."  Dkt. No. 96-1 at ¶ 82.

[7]  In 2018, after the package restrictions were eliminated, Zielinski received a copy of the book.  See Dkt. No. 96-4 at 65-66.

Zielinski refused to sign the form.  See Dkt. No. 96-4 at 74.  The package was not delivered to Zielinski.  See Dkt. No. 96-3 at 39, ¶ 40; Dkt. No. 96-4 at 71.

On February 10, 2017, a package from "Books Through Bars" arrived at Clinton C.F. addressed to Zielinski.  Dkt. No. 96-3 at 25, ¶ 21.  A Clinton C.F. package room officer refused to deliver the package because Zielinski could not prove that he paid for the items. Dkt. No. 96-4 at 81-83.  Zielinski told the officer that the books were from a charity and the officer responded, "you can't get anything free."  Id.  An employee entered a notation in the "Non-Food Package Record" (Form 1755F) related to the package and noted "4921" in the column marked "REC'D BY."  Dkt. No. 48-2 at 113.  The package was returned to the sender.  Dkt. No. 96-1 at ¶ 124.  In October 2017, Zielinski was advised that a package from "Paralegal Research Assoc., Inc." was "returned to sender" pursuant to Dir. #4921.  Dkt. No. 48-1 at 89.  In March 2018, Zielinski was advised that a package from Amazon Books was returned to the sender pursuant to Dir. #4921.  See Dkt. No. 48-2 at 105.

### b.  Grievances

While confined at Clinton C.F., Zielinski filed four grievances in 2016 and 2017 related to his packages.

### i.  CL-70403-16

On October 12, 2016, Zielinski filed a grievance complaining that his family and friends could not order packages and that he could not receive books because Clinton C.F. was a TV facility.  See Dkt. No. 96-3 at 49.  Zielinski cited to Dir. #4911 and Dir. #4921 and stated that "[n]either Directive . . .  contains any restriction on who can order packages and items for inmates[.]"  Id.  In December 2016, Clinton C.F. Superintendent Kirkpatrick

8

("Kirkpatrick")[8] denied the grievance quoting an October 2013 Central Office Review

Committee ("CORC") decision related to a grievance filed by another Clinton C.F. inmate.[9]

Id. at 51.  Kirkpatrick concluded:

> [A] third party, such as a friend, may not purchase an item
> from a vendor and have it sent to a facility that permits
> inmates the option to own a personal television, regardless of
> who provides the money.  CORC asserts that all such
> purchases must be made by the inmate directly from
> approved vendors.  CORC further asserts that to allow
> inmates at a T.V. facility to receive packages not ordered for
> directly by them with their own inmate account funds would
> enable them to shield monetary judgements  and/or
> settlements from restitution owed to crime victims or from
> court ordered mandatory obligations, create opportunities to
> strong hold or extort one another and to commit fraud upon
> persons outside the facility, as well as promote other various
> illegal activities.

Dkt. No. 96-3 at 51.  Zielinski appealed Kirkpatrick's decision, which CORC upheld in

October 2017, citing "legitimate security and administrative" concerns.  Dkt. No. 48-2 at 112.


### ii.  CL-70772-17

In December 2016, Zielinski filed a grievance claiming that Clinton C.F. applied Dir.

#4921 to disallow "publications unless they are ordered and paid for out of inmates'

accounts" and, in doing so, violated a court ordered stipulation entered in the Northern

District of New York in 1983.  Dkt. No. 96-3 at 52; Dkt. No. 96-4 at 38-43.  In February 2017,

---

[8]  Kirkpatrick is not a defendant in this action.

[9]  The CORC decision was originally issued in July 2012 in response to Grievance No. CL-61937-12 filed by Cedric Golston.  Dkt. No. 48-2 at 107; Dkt. No. 96-3 at 51; Dkt. No. 96-4 at 22.  Discussed at length infra, Golston filed an Article 78 petition and, as a result of a court order resolving that petition, CORC issued an amended decision in October 2013.  See Dkt. No. 48-2 at 108.

Kirkpatrick denied the grievance with the same language used in his denial of Zielinski's previous grievance.  See Dkt. No. 96-3 at 53.  In March 2018, CORC accepted the grievance, in part, noting, "per the 2/15/18 memorandum from Acting Deputy Commissioner for Correctional Facilities, staff were advised that package limits set forth in Directive #4921 do not apply to books, magazines and periodicals received from family, friends, or other personal sources."  Dkt. No. 37-6 at 115.

### iii.  CL-70984-17

On January 29, 2017, Zielinski filed a grievance claiming that his legal mail from Pace Law School was sent "in error" to the package room.  Dkt. No. 96-3 at 56.  In March 2017, Kirkpatrick denied the grievance noting that correspondence from "all colleges, schools, and universities . . . should not be considered privileged and . . . would be subject to processing in accordance with Directive #4911."  Id. at 58.  An investigation was conducted to determine why Zielinski's mail from Pace Law School was sent to the package room.  See Dkt. No. 96-4 at 35, 45, 50, 54.  In an interdepartmental memorandum, a sergeant advised that, pursuant to a prior CORC decisions, "correspondence from all colleges . . . should not be considered privileged and is subject to Dir. 4422."  Id. at 45.  The sergeant noted that, "in certain cases mail from school of law are privileged correspondence if the sender is a legal representative e.g. Clinic or a Lawyer at that school.  However if it [is] just from the school like Pace University [it] is not considered privileged correspondence."  Id.  On January 15, 2020, CORC denied Zielinski's appeal noting that a "book from Pace University" was "appropriately forwarded to the package room for processing," and advised that "CORC has been unable to determine what happened to the book[.]"  Dkt. No. 96-4 at 59.

### iv.  CL-71092-17

On February 23, 2017, Zielinski filed a grievance related to the Books Through Bars package and claimed that the application of Dir. #4921 was unconstitutional because "there is no way to 'order' from a charity that has no prices."  Dkt. No. 96-4 at 34.  On March 30, 2017, Kirkpatrick denied the grievance noting that "[t]he package in question was denied because it wasn't allowed per directive 4921."  Dkt. No. 48-1 at 77.  Zielinski appealed the decision to CORC; on May 9, 2018, CORC denied the grievance "with clarification."  Dkt. No. 96-4 at 32.  CORC noted that Dir. #4752[10] prohibits inmates from receiving donated books directly from outside organizations.  See id.  CORC further noted that monetary damages were not available because, at the time the complaint was filed, Dir. #4921 was in effect and precluded the receipt of packages that were not ordered and paid for directly by the inmate from an approved vendor.  See id.

### B.  Procedural History

On September 29, 2017, Zielinski commenced this action against Annucci with the filing of a pro se civil rights Complaint.  Dkt. No. 1 ("Compl.").  Zielinski challenged "a policy and custom of . . . DOCCS . . . of prohibiting inmates at facilities which sell televisions on commissary, referred to by DOCCS as 'TV Facilities,' from receiving books, magazines, educational supplies, religious materials, and other items permissible under DOCCS'

---

[10]   Dir. #4752 sets forth the procedure for the examination and receipt of materials donated for Departmental use.  Section I explains: Members of the community and/or staff offer items such as books, equipment, and automobiles to the Department for program purposes or for use at worksites.  See Dkt. No. 96-3 at 61-62.

'package' policies."  Compl. at 1.  With the Complaint, Zielinski filed a motion for a preliminary injunction seeking an order directing Annucci to refrain from enforcing the challenged policies.  See Dkt. No. 5.

In a Decision and Order issued on January 11, 2018 (the "January Order"), the Court reviewed the Complaint in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A, and directed Annucci to respond to the following: (1) plaintiff's First Amendment claims related to the right to the free flow of mail; (2) plaintiff's Fourteenth Amendment procedural due process claim related to books and legal correspondence rejected upon delivery, and returned to sender, without notice; and (3) plaintiff's substantive due process claims related to the constitutionality of DOCCS' Directives.  See Dkt. No. 10 at 11, 20-22, 28.  In the January Order, the Court also directed Annucci to respond to Zielinski's motion seeking preliminary injunctive relief.  See id. at 28.

On April 6, 2018, Annucci filed a response to the motion for injunctive relief.  See Dkt. No. 21.  Annucci argued that Plaintiff's motion was moot because DOCCS eliminated the "subject package restriction[s]", effective April 6, 2018.  Id.  Annucci claimed, "[i]n other words, Plaintiff and all other inmates at 'TV facilities' are now afforded the same package privileges as inmates at all DOCCS facilities."  Id.  In response, Zielinski withdrew his motion for injunctive relief stating, "at least at Clinton C.F. they appear to be complying with the policy change and are allowing inmates to get packages they previously would not have been able to."  Dkt. No. 33 at 1.

On April 6, 2018, in lieu of an answer, Annucci moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  See Dkt. No. 22.  Zielinski opposed the motion to dismiss and filed a cross motion to amend the Complaint to include new defendants and a

new First Amendment claim related to the right to receive information and ideas.  See Dkt. No. 37.  In a Decision and Order issued on March 22, 2019, the Court denied Annucci's motion and granted Zielinski's motion to amend to include Bellnier as a defendant and the new First Amendment claim.  Id.  On May 20, 2019, Annucci and Bellnier filed an Answer (Dkt. No. 72) and on December 23, 2019, Zielinski was deposed.  See Dkt. No. 96-4 at 58.

On May 8, 2020, Zielinski filed the within motion pursuant to Fed. R. Civ. P. 56 seeking judgment as a matter of law.  See Dkt. No. 96.  Defendants opposed the motion and cross-moved for summary judgment.  See Dkt. No. 104.  Zielinski opposed the cross motion and filed a reply.  See Dkt. No. 110.

## II. DISCUSSION[11]

Zielinski moves for summary judgment "on the issue of liability for each of [the] claims" in the Amended Complaint.  Dkt. No. 96-2 at 6.  Defendants oppose the motion and cross move for summary judgment arguing that (1) Zielinski's Fourteenth Amendment substantive and procedural due process claims lack merit; (2) Zielinski failed to establish Defendants' personal involvement in the alleged First Amendment constitutional violations; and (3) the claims are barred by the doctrine of qualified immunity.  See Dkt. No. 104-10.

### A.  Legal Standard

Summary judgment may be granted only if the submissions of the parties taken together "show[] that there is no genuine dispute as to any material fact and the movant is entitled to

---

[11]      All unpublished opinions cited to by the Court in this Report–Recommendation are, unless otherwise noted, attached to this Report–Recommendation.

judgment as a matter of law." FED. R. CIV. P. 56(a); see Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 251-52 (1986). "The party moving for summary judgment bears the initial

burden of showing, through the production of admissible evidence, that no genuine issue of

material fact exists." Price v. Oropallo, No. 9:13-CV-0563 (GTS/TWD), 2014 WL 4146276,

at *4 (N.D.N.Y. Aug. 19, 2014) (citing Salahuddin v. Goord, 467 F.3d 263, 272-73 (2d Cir.

2006)). Facts are material if they may affect the outcome of the case as determined by

substantive law. See Anderson, 477 U.S. at 248. A dispute of fact is "genuine" if "the

[record] evidence is such that a reasonable jury could return a verdict for the nonmoving

party." Id. "In determining whether summary judgment is appropriate, [the Court will]

resolve all ambiguities and draw all reasonable inferences against the moving party."

Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir.1997).

Only after the moving party has met this burden is the nonmoving party required to

produce evidence demonstrating that genuine issues of material fact exist. See Salahuddin,

467 F.3d at 272-73. The nonmoving party must do more than "simply show that there is

some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith

Radio Corp., 475 U.S. 574, 586 (1986). "Conclusory allegations, conjecture and

speculation . . . are insufficient to create a genuine issue of fact." Kerzer v. Kingly Mfg., 156

F.3d 396, 400 (2d Cir. 1998).

A party opposing summary judgment is required to submit admissible evidence. See

Spiegel v. Schulmann, 604 F.3d 72, 81 (2d Cir. 2010) ("It is well established that in

determining the appropriateness of a grant of summary judgment, [the court] . . . may rely

only on admissible evidence.") (internal quotation marks and citation omitted). A plaintiff's

verified complaint is to be treated as an affidavit. See Colon v. Coughlin, 58 F.3d 865, 872

14

(2d Cir. 1995) ("A verified complaint is to be treated as an affidavit . . . and therefore will be

considered in determining whether material issues of fact exist . . . .").  "To satisfy Rule

56(e), affidavits must be based upon concrete particulars, not conclusory allegations."

Schwapp v. Town of Avon, 118 F.3d 106, 111 (2d Cir. 1997) (internal quotation marks and

citation omitted).  "Statements that are devoid of any specifics, but replete with conclusions,

are insufficient to defeat a properly supported motion for summary judgment."  Bickerstaff v.

Vassar Coll., 196 F.3d 435, 452 (2d Cir. 1999).  "'The mere existence of a scintilla of

evidence in support of the plaintiff's position will be insufficient; there must be evidence on

which the jury could reasonably find for the plaintiff.'"  Jeffreys v. City of New York, 426 F.3d

549, 554 (2d Cir. 2005) (brackets omitted) (quoting Anderson, 477 U.S. at 252).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the

non-movant special solicitude.  See Treistman v. Fed. Bureau of Prisons, 470 F.3d 471, 477

(2d Cir. 2006).  As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se
> litigant is entitled to special solicitude, that a pro se litigant's
> submissions must be construed liberally, and that such
> submissions must be read to raise the strongest arguments that
> they suggest.  At the same time, our cases have also indicated
> that we cannot read into pro se submissions claims that are not
> consistent with the pro se litigant's allegations, or arguments that
> the submissions themselves do not suggest, that we should not
> excuse frivolous or vexatious filings by pro se litigants, and that
> pro se status does not exempt a party from compliance with
> relevant rules of procedural and substantive law . . . .

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v.

Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count,

we have reminded district courts that when [a] plaintiff proceeds pro se, . . . a court is

obligated to construe his pleadings liberally.") (internal quotation marks and citations

omitted).

When considering cross-motions for summary judgment, a court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Hotel Employees & Rest. Employees Union, Local 100 of New York, New York & Vicinity, AFL CIO v. City of New York Dep't of Parks & Recreation, 311 F.3d 534, 543 (2d Cir.2002) (quoting Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir.1993)). "[N]either side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it [and] a district court is not required to grant judgment as a matter of law for one side or the other." Heublein, 996 F.2d at 1461.

## B. Fourteenth Amendment

The Fourteenth Amendment provides, in relevant part, that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. Defendants do not dispute Zielinski's claim that he had a property interest in his books and mail. See Dkt. No. 96-2 at 18; Dkt. No 104-10 at 11-12.

### 1. Substantive Due Process

"Substantive due process protects individuals against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense . . . but not against government action that is incorrect or ill-advised." Lowrance v. Achtyl, 20 F.3d 529, 537 (2d Cir. 1994) (internal quotation marks and citations omitted). To establish a substantive due

16

process claim, the defendants actions must be "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Okin v. Villiage of Cornwall–On–Hudson Police Dep't, 577 F.3d 415, 431 (2d Cir. 2009) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 847 n. 8 (1998)).  The Northern District of New York has observed that, "[v]ery few conditions of prison life are 'shocking' enough to violate a prisoner's right to substantive due process," and noted that the Supreme Court of the United States has "provided only two examples: the transfer to a mental hospital and the involuntary administration of psychotropic drugs." Samms v. Fischer, No. 9:10-CV-349 (GTS/GHL), 2011 WL 3876528, at *12 (N.D.N.Y. Mar. 25, 2011) (citing Sandin v. Conner, 515 U.S. 472, 479 n. 4 (1995)).  Moreover, "[i]f a constitutional claim is covered by a specific constitutional provision, . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." United States v. Lanier, 520 U.S. 259, 272 n. 7 (1997).

Zielinski argues that the package restrictions for inmates at TV facilities are "patently absurd" and enforced in an "arbitrary and unpredictable" manner.  Dkt. No. 96-1 at ¶ 6; Dkt. No. 96-2 at 22-24.  As a result, Zielinski did not receive five parcels/packages over the span of eighteen months.  See id.  Defendants argue that the evidence does not establish that they acted with the necessary malicious intent to support a substantive due process claim. See Dkt. No. 104-10 at 12.

Even assuming Zielinski's assertions are true; i.e., that Dir. #4921 was arbitrarily applied to deprive him of his books and parcels, the record does not support the conclusion that DOCCS' personnel acted in a manner that was "shocking" in a constitutional sense when they refused to deliver his parcels.  See Weiler v. Purkett, 137 F.3d 1047, 1051 (8th Cir.

1998) (concluding that the plaintiff did not state a claim for a violation of his right to substantive due process with allegations that the defendants did not ensure that a package rule was enforced).  Additionally, Plaintiff's substantive due process claim must be dismissed because it is duplicative of his First Amendment claims.  See Rother v. NYS Dep't of Corrs. and Cmty. Supervision, 970 F. Supp. 2d 78, 100 (N.D.N.Y. 2013) ("[S]ubstantive-due-process claims must be dismissed where they are 'merely duplicative of claims explicitly protected under other constitutional sources.'" (internal quotation marks and citation omitted)).

Accordingly, it is recommended that Plaintiff's motion for summary judgment on this issue be denied and further, that Defendants' motion for summary judgment insofar as it seeks dismissal of Plaintiff's Fourteenth Amendment substantive due process claim be granted.

## 2.  Void for Vagueness

Zielinski claims that Dir. #4921 and Dir. #4911 were unconstitutionally vague.[12]  See Dkt. No. 96-2 at 20-21.  Zielinski argues that the Directives lacked definitions for "essential terminology," including "personal resources," "ordered," and "approved vendors".  Dkt. No. 96-2 at 20; Dkt. No 110-1 at 14-15.  Zielinski also contends that the Directives failed to "meaningfully specify how staff are to determine whether a publication received in a parcel is to be treated as 'correspondence' subject to Directive #4422, or as a 'package' subject to

---

[12]  Plaintiff also argues that Directive #4422 was unconstitutionally vague.  See Dkt. No. 96-2 at 21. However, the Amended Complaint does not include a Fourteenth Amendment claim related to Dir. #4422.  As such, the undersigned declines to determine the merits of this claim on summary judgment.

Directive #4911."  Dkt. No. 96-2 at 21-22.  Zielinski maintains that, as a result of the vague language in the Directives, DOCCS' staff, at every "level" and varying facilities, including Clinton C.F., "made up new restrictions arbitrarily and entirely unpredictably," resulting in his books and mail being intercepted and confiscated in violation of his right to due process. Dkt. No. 96-1 at ¶¶ 6, 71, 124; Dkt. No. 110-1 at 15.

Defendants have not responded to Zielinski's vagueness argument; however, the failure to respond to Zielinski's motion for summary judgment on this claim does not, without more, warrant an award of summary judgment in his favor.  See Amaker v. Foley, 274 F.3d 677, 681 (2d Cir. 2001) ("[I]t is clear that even when a nonmoving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.").

"The vagueness doctrine is a component of the right to due process."  Farrell v. Burke, 449 F.3d 470, 485 (2d Cir. 2006).  "[A] noncriminal statute is unconstitutionally vague under the due process clause . . . when its language does not convey sufficiently definite warning as to the proscribed conduct when measured by common understanding or practice."  Krull v. Oey, 9:19-CV-0142 (TJM/CFH), 2019 WL 1207963, *8 (N.D.N.Y. Mar. 14, 2019) (quoting Reynolds v. Wagner, 128 F.3d 166, 182 (3d Cir. 1997)).  "[T]he policy must be so vague as to amount to the absence of any real policy or statute."  Id. (quoting Reynolds, 128 F.3d at 182).  "Courts have recognized prisoners' substantive due process claims that allege that prison rules failed to provide adequate notice of prohibited conduct [because] . . . inmates must be free to avoid prohibited conduct, and prison regulations must therefore place them on notice of the actions that could subject them to discipline."  Leitzsey v. Coombe, 998 F.

Supp. 282, 289 (W.D.N.Y. 1998) (internal citations omitted).

> A disciplinary rule is unconstitutionally vague if persons of
> common intelligence must necessarily guess at its meaning and
> differ as to its application, or if it fails to give a person of ordinary
> intelligence fair notice of conduct proscribed or required by the
> regulation and encourages arbitrary and erratic behavior on the
> part of the officials charged with enforcing the rule.

Booker v. Maly, No. 9:12-CV-246 (NAM/ATB), 2014 WL 1289579, at *7 (N.D.N.Y. Mar. 31,

2014) (internal quotation marks and citations omitted) aff'd, 590 F. App'x 82 (2d Cir. 2015).

To assess a vagueness challenge as-applied, a two-part test is conducted.  United

States v. Nadi, 996 F.2d 548, 550 (2d Cir.1993).  "[A] court must first determine whether the

statute gives the person of ordinary intelligence a reasonable opportunity to know what is

prohibited."  Id. (brackets, quotation marks, and citation omitted).  Second, the court

"consider[s] whether the law provides explicit standards for those who apply it."  Id.

(brackets, quotation marks, and citation omitted); see Harnage v. Brighthaupt, 168 F. Supp.

3d 400, 410 (D. Conn. 2016) (examining, under the second prong, whether the evidence

suggests "explicit standards for the staff who were applying the rules regarding mail.") aff'd,

720 F. App'x 79 (2d Cir. 2018).

In the context of the vagueness claim, Plaintiff relies upon Section III(B)(2) of Dir.

#4921, which provides: "An inmate who has the option to own a personal television set may

only receive items ordered directly by the inmate from approved vendors."  Dkt. No. 104-6 at

III(B)(2).  Zielinski contends that nothing in Dir. #4921 expressly provides that the

"packages" could not be purchased by family members, on the inmates' behalf, or a

requirement that the parcel must be purchased using funds from the inmate's account.  Dkt.

No. 96-3 at 53.

As to the first prong of the two-part test, there is an issue of fact as to whether Zielinski had notice that books purchased by his family members from approved vendors were prohibited by Dir. #4921 and further, whether Zielinski was on notice that he was prohibited from receiving items in packages unless they were paid for with a facility check. Although Zielinski maintains that he was never "referred" to any CORC decision imposing such requirements, the record belies his argument. As discussed supra, Zielinski filed a grievance in October 2016 and claimed that the Directives did not prohibit third parties from ordering packages for inmates. See Dkt. No. 96-3 at 49. In December 2016, Kirkpatrick issued a decision and advised that "a third party, such as a friend, may not purchase an item from a vendor and have it sent to a facility that permits inmates the option to own a personal television, regardless of who provides the money . . . all such purchases must be made by the inmate directly from approved vendors." Dkt. No. 96-3 at 51. Kirkpatrick also advised that inmates may only receive packages "ordered for directly by them with their own inmate account funds[.]" Id. In February 2017, Kirkpatrick reiterated this reasoning in response to another grievance filed by Plaintiff. Id. at 53.

The second prong of the two-part test is not as easily resolved. Zielinski argues that DOCCS' staff misinterpreted and improperly extended Dir. #4921 and Dir. #4911 to restrict items in packages based upon the source and whether the inmate had paid for the items with a facility check. See Dkt. No. 96-1 at ¶ 6. Zielinski maintains that DOCCS' staff were confused by the Directives and unable to determine whether a parcel should be treated as correspondence pursuant to Dir. #4422 or a package pursuant to Dir. #4911. See Dkt. No. 96-1 at ¶ 96. In support of his arguments, Zielinski proffered copies of CORC decisions on grievances filed by inmates at various facilities including Attica C.F., Elmira C.F., Great

21

Meadow C.F., and Clinton C.F. over the course of twelve years from 2005 through 2017. See Dkt. No. 48-1 at 40-42, 46-51, 55-57, 65, 69; Dkt. No. 48-2 at 3, 43, 107, 109-111; Dkt. No. 96-3 at 73-81, 83.  The grievances related to Dir. #4921 and specifically addressed books and the source of funds.  See id.  Zielinski also provided copies of inter-departmental communications and court documents from lawsuits related to Dir. #4921.  See id.

    It is undisputed that the relevant version of Dir. #4921 did not define the term "ordered," and that, while other DOCCS Directives contain a specific section entitled "Definition", Dir. #4921 lacks any such section.  See Dkt. No. 104-3; Dkt. No. 104-6.  The confusion surrounding the use of the term "ordered," and the application of the word in association with packages at TV facilities, is evident from the documents proffered by Plaintiff in support of his motion for summary judgment.  For instance, in 2005, three years after Dir. #4921 was amended to include Section III(B)(2), CORC issued a decision, in response to a grievance filed by an inmate at Attica C.F.  See Dkt. No. 48-2 at 56.  In that decision, CORC interpreted Section III(B) as mandating that packages be purchased using inmate account funds.  See id.  In an inmate grievance from Attica involving Dir. #4921, CORC concluded, "that grievant indicated his wife ordered the food package for him.  Dkt. No. 48-2 at 43. CORC asserted the above provision requires the items to be ordered directly by the inmate. See id.  Review with Inmate Accounts confirmed there was no outstanding funds to this company."  Id.  Further, in 2006, CORC issued another decision denying a grievance filed by an inmate at Great Meadow C.F. because the inmate failed to present documentation proving that he ordered a package of books "in accordance with Department policy."  Dkt. No. 48-1 at 57.

    In April 2008, the Superintendent of Elmira C.F. seemingly adopted that interpretation of

Section III and issued a memorandum addressed to the inmate population.  See Dkt. No. 48-2 at 94.  The memorandum stated, in relevant part, "all incoming packages received from an approved vendor must have been requested by the inmate in order to be allowed.  There must be a corresponding disbursement form on file showing that the inmate ordered the items and payment was approved for the purchase."  Id.

In February 2012, Cedric Golston filed a grievance challenging the "arbitrary and capricious interpretation of Dir. #4921" at Clinton C.F.  Dkt. No. 96-4 at 22.  Golston argued that the directive did not mandate that an inmate purchase the items, only that the inmate directly order the goods.  See id.  On July 25, 2012, CORC issued a decision denying the grievance.  See Dkt. No. 48-2 at 107.  Citing to Dir. #4921, Section III(B), CORC advised, in relevant part:

> [A] third party, such as a friend, may not purchase an item from a vendor and have it sent to a facility that permits inmates the option to own a personal television, regardless of who provides the money.  CORC asserts that all such purchases must be made by the inmate directly from approved vendors.

Id.

In November 2012, Golston filed an Article 78 petition in New York State Supreme Court, Clinton County, challenging Dir. #4291.  See Dkt. No. 96-4 at 21-31.  Golston claimed that DOCCS "forc[ed] inmates to both directly order goods and to purchase those goods from that inmate's account," which was an "arbitrary and capricious" interpretation of Dir. #4921.  Id. 96-4 at 21.  In a Decision and Judgment issued on May 31, 2013, the Hon. Timothy J. Lawliss concluded that while Dir. #4921 requires that packages be ordered directly by the inmate, it "does not contain a provision that requires that the items ordered

also be paid from by funds from the inmate's account." Id. at 25.  The court granted the petition and remitted the matter for further proceedings.  See id.

In response to Judge Lawliss' order, CORC issued an amended decision in October 2013 and advised, in relevant part:

> [A] third party, such as a friend, may not purchase an item from a vendor and have it sent to a facility that permits inmates the option to own a personal television, regardless of who provides the money.  CORC asserts that all such purchases must be made by the inmate directly from approved vendors. CORC further asserts that to allow inmates at a T.V. facility to receive packages not ordered and paid for directly by them with their own inmate account funds with enable them to shield monetary judgments and/or settlements from restitution owed to crime victims or from court ordered mandatory obligations, create opportunities to strong hold or extort one another and to commit fraud upon persons outside the facility, as well as promote other various illegal activities.

Dkt. No. 48-2 at 108.

In 2013 and 2015, DOCCS amended Dir. #4921.  At that time, DOCCS had the opportunity to address the issues raised in Judge Lawliss' decision and further define the terminology in the Directive and/or provide clear direction to staff related to the source of funds.  However, the language in Section III(B) remained unchanged, see Dkt. No. 48-2 at 39; Dkt. No. 48-2 at 42, 88, 91, 101; Dkt. No. 104-6.  Further, despite Judge Lawliss' ruling, CORC continued to issue decisions requiring that packages for inmates in TV facilities be paid for with inmate account funds.  See Dkt. No. 48-1 at 65; Dkt. No. 48-2 at 109-111; Dkt. No. 96-3 at 73-77, 79, 81, 83.  For example, CORC issued decisions in 2015 and 2016 denying two Clinton C.F. inmates a "package of free religious books" from an outside source, citing Dir. #4921(III)(B).  Dkt. No. 48-1 at 65; Dkt. No. 96-3 at 83.  CORC explained

24

that the grievants would not be prohibited from receiving religious books when ordered from an approved vendor and paid for directly through his account.  See id.

The confusion surrounding the application of Dir. #4921 is clearly memorialized in O'Gorman's February 2018 memorandum.  The Court takes note of the timing of the memorandum, as it was issued one month after Annucci was served with the original Complaint in this action.  In the memorandum, O'Gorman reminded "all staff" that Dir. #4921 does "not apply to books, magazines, and periodicals.  Packages containing these printed materials are not to be counted towards the two-package limit[.]"  Dkt. Nos. 12, 15, 104-7.

Upon review of the record, the Court finds that there are genuine issues of material fact as to whether Zielinski had adequate notice of prohibited conduct and whether the officials applying Dir. #4921 and Dir. #4911 were provided with adequate direction regarding the application of the Directives.  See Scible v. Steward, No. 1:08-CV-100 (IMK), 2009 WL 87427, at *9 (N.D.W. Va. Jan. 13, 2009) (denying motion to dismiss challenge to prison correspondence regulation reasoning that "it is not clear that a person of reasonable intelligence would know that what the plaintiff did in this case was wrong.").  The Court recognizes that issues of security in prisons can usurp the strict application of the vagueness doctrine, see Meyers v. Aldredge, 492 F.2d 296, 309 (3d Cir. 1974), however, in this instance, Defendants have not offered any explanation or argument related to the Directives and legitimate penological interests or institutional security.  Accordingly, the undersigned recommends denying Plaintiff's motion for summary judgment on this ground.

### 3. Procedural Due Process

Zielinski moves for summary judgment on his Fourteenth Amendment procedural due process claim arguing that he was deprived of two parcels from Books Through Bars and Pace Law School without sufficient process.  See Dkt. No. 96-2 at 18-19; Dkt. No. 110-1 at 13.  Defendants argue, correctly, that federal courts do not provide redress for the deprivation of property if there is an adequate state court remedy available to a plaintiff.  See Hudson v. Palmer, 468 U.S. 517, 533 (1984).  However, when reviewing alleged procedural due process violations, the Supreme Court has distinguished between claims based on random, unauthorized acts by state employees and claims based on established state procedures.  See Parratt v. Taylor, 451 U.S. 527, 541 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327 (1986).  "[A] deprivation effectuated through the random and unauthorized acts of government officials does not violate procedural due process so long as the government provides a meaningful remedy subsequent to the deprivation.  Schultz v. Egan, 103 F. App'x 437, 440 (2d Cir. 2004) (internal quotation marks and citation omitted).  "The rationale for this principle is plain: because the challenged misconduct is random and unauthorized, it is impossible for the government to anticipate and prevent the wrongful loss of liberty or property in advance, and it has no realistic alternative other than to adopt remedies capable of righting the wrong after the deprivation."  Id. (internal quotation marks and citation omitted).  "By contrast, the existence of independent state relief does not defeat a Section 1983 claim where the deprivation complained of results from the operation of established state procedures."  Alexandre v. Cortes, 140 F.3d 406, 411 (2d Cir. 1998) (internal quotation marks and citation omitted).  "[W]hen the deprivation occurs in the more structured environment of established state

procedures, rather than random acts, the availability of post[-]deprivation procedures will not, ipso facto, satisfy due process." Moore v. Newton, 220 F. Supp. 3d 275, 295 (E.D.N.Y. 2016) (internal quotation marks and citations omitted).

In Parratt, the petitioner/inmate alleged that his Fourteenth Amendment right to due process was violated when his packages were negligently lost by prison officials who failed to follow normal prison procedures for the handling of mail. See Parratt, 451 U.S. at 530. The Supreme Court held that the petitioner failed to allege a violation of the Fourteenth Amendment because the deprivation occurred "as a result of the unauthorized failure of agents of the State to follow established state procedure." Id. at 543. By contrast, in Wright v. Newsome, 795 F.2d 964 (11th Cir. 1986), the Eleventh Circuit distinguished the plaintiff's claims from the claims in Parratt, observing that, the plaintiff alleged that his mail was continually confiscated "despite court orders to the contrary and notice to the warden and other responsible officials." 795 F.2d at 967. The Court noted that it could be "inferred" that the actions were "unaccompanied by procedural safeguards" and "sanctioned standard operating procedure" at the prison. Id. Thus, the Court held that the district court's dismissal of the due process claim was erroneous because the plaintiff sufficiently alleged that the deprivation was "the result of established state procedure[.]" Id.

Like the plaintiff in Wright, Zielinski claims that his mail and property were confiscated pursuant to Dir. #4921 and Dir. #9411, which were "established state procedures." Dkt. No. 96-2 at 19; Dkt. No. 110-1 at 5-6. In support of his argument that the procedures were sanctioned, Zielinski relies upon the copies of CORC decisions involving Dir. #4921 discussed, supra. These decisions were issued in response to several grievances, over the course of twelve years, filed by inmates at various facilities challenging the application of

Dir. #4921 to packages and books.  Dkt. No. 48-1 at 40-42, 46-51, 55-57, 65, 69; Dkt. No. 48-2 at 3, 43, 107, 109-111; Dkt. No. 96-3 at 73-81, 83.

Defendants have not responded to Zielinski's "established state procedures" argument but, as noted supra, the lack of response does not warrant an award of summary judgment to plaintiff.  Based upon the record, the Court finds issues of fact for a jury to resolve related to Zielinski's procedural due process claim.  See Walters v. Corr. Corp. Of Am., 119 Fed. App'x 190, 192 (10th Cir. 2004) (overruling district court dismissal of due process claim where the plaintiff claimed that "prison procedures themselves created the risk of his being deprived of property[.]").  Accordingly, the undersigned recommends denying the parties' motions for summary judgment on this ground.

### B.  First Amendment

"A prison inmate . . . retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."  Giano v. Senkowski, 54 F.3d 1050, 1053 (2d Cir. 1995).  "That inmates have a First Amendment right to access to publications consistent with prison security is clearly established."  Allen v. Coughlin, 64 F.3d 77, 81 (2d Cir. 1995) (citation omitted).  When balancing the inmate's First Amendment rights against the interests of the correctional institution, the Court employs a four-part test:

> (1) whether there is a rational connection between the restriction and the legitimate governmental interest used to justify it; (2) whether alternative avenues of exercising the right remain open to the inmate; (3) whether accommodation of the right will have an adverse impact on guards, other inmates, and prison resources generally; and (4) whether obvious, easy alternatives

28

to the restriction exist.

Purnell v. Lord, 952 F.2d 679, 683 (2d Cir. 1992) (citing Turner v. Safley, 482 U.S. 78, 89-90 (1987)).

The First Amendment also "protects an inmate's right to send and receive both legal and nonlegal mail, although prison officials may regulate that right if the restrictions they employ are 'reasonably related to legitimate penological interests.'" Abreu v. Travers, No. 9:15-CV-0540 (MAD/ATB), 2016 WL 6127510, at *10 (N.D.N.Y. Oct. 20, 2016) (quoting Thornburgh v. Abbott, 490 U.S. 401 409 (1989) (additional quotation marks and citation omitted)); see Johnson v. Goord, 445 F.3d 532, 534 (2d Cir. 2006) ("A prisoner's right to receive and send mail . . . may be regulated"; "[s]uch regulation is valid if it is reasonably related to legitimate penological interests." (internal quotation marks and citations omitted)) (per curiam). "Restrictions on prisoners' mail are justified only if they further one or more of the substantial governmental interests of security, order, and rehabilitation and must be no greater than is necessary or essential to the protection of the particular government interest involved." Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) (internal quotation marks, brackets, ellipse, and citation omitted). When asserting a First Amendment violation resulting from interference with mail, a prisoner must show that prison officials "regularly and unjustifiably interfered with the incoming legal mail rather than merely showing an isolated incident." Cancel v. Goord, No. 00-CV-2042 (LMM), 2001 WL 303713, at *6 (citing Washington v. James, 782 F.2d 1134, 1139 (2d Cir. 1986)); see also Rasheen v. Adner, 356 F. Supp. 3d 222, 234 (N.D.N.Y. 2019) ("[A]n isolated incident of mail tampering is usually insufficient to establish a constitutional violation." (internal quotation marks and citation omitted)).

Here, it is undisputed that from October 2016, until March 2018, five packages addressed to Zielinski were intercepted.  See Dkt. No. 48-1 at 89; Dkt. No. 48-2 at 105; Dkt. No. 96-1 at ¶ 124; 96-3 at 23-24, ¶¶ 16-7; Dkt. No. 96-4 at 71.  Zielinski argues that no reasonable factfinder could conclude that Dir. #4921 and Dir. #4911, which officials relied upon when intercepting the publications and books, had a "valid, rational connection to a legitimate governmental objective."  Dkt. No. 96-2 at 13.  Zielinski asserts that the Directives, which banned prisoners from receiving books and other publications, applied only in TV facilities and any "security concerns" put forth by DOCCS are "wholly irrational" because the, "[m]ere availability of televisions at a facility's commissary cannot rationally give rise to . . . security concerns[.]"  Dkt. No. 96-1 at ¶ 45.  Zielinski also contends that the fact that the policies were repealed after service of the Complaint in this action further debunks any argument by Defendants related to facility safety and security.   See Dkt. No. 96-2 at 15.  Zielinski argues that watching television is not an adequate substitute for reading books and other publications.  Id. at 14 (citing, among other cases, Jacklovich v. Simmons, 392 F.3d 420, 431 (10th Cir. 2004) (holding that "the ability to listen to the radio or watch television is not an adequate substitute for reading newspapers and magazines.")).  Moreover, Zielinski argues that Defendants restricted his access simply because he had the option to purchase a television, without any consideration for the fact that he did not own a television.  Id.

Defendants have not responded to Zielinski's substantive arguments related to the First Amendment claims and failed to present evidence which would allow the Court to engage in a meaningful analysis of the Directives under Turner.  Instead, Defendants argue that they

were not personally involved the alleged First Amendment violations.

## 1. Personal Involvement

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)). Thus, supervisory officials may not be held liable merely because they held a position of authority. See Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). However, supervisory personnel may be considered "personally involved" if:

> (1) [T]he defendant participated directly in the alleged constitutional violation;
>
> (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;
>
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
>
> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or
>
> (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Wright, 21 F.3d at 501 (additional citation omitted)).[13] Absent a subordinate's underlying constitutional violation, there can be

---

[13] Various courts in the Second Circuit have postulated how, if at all, the Iqbal decision has affected the five Colon factors which were traditionally used to determine personal involvement. Pearce v. Estate of Longo, 766 F.Supp.2d 367, 376 (N.D.N.Y. 2011), rev'd in part on other grounds sub nom., Pearce v. Labella, 473 F. App'x 16 (2d Cir. 2012) (recognizing that several district courts in the Second Circuit have debated Iqbal's impact on the five Colon factors); Kleehammer v. Monroe Cnty., 743 F.Supp.2d 175, 182

no supervisory liability.  Hernandez v. Keane, 341 F.3d 137, 145 (2d Cir. 2003); see Elek v. Inc. Vill. of Monroe, 815 F. Supp. 2d 801, 808 (S.D.N.Y. 2011) (collecting cases for the proposition that "because [p]laintiff has not established any underlying constitutional violation, she cannot state a claim for 1983 supervisory liability.").

Relying upon the third Colon factor (see Dkt. No. 110-1 at 19, n. 6), Zielinski claims that Annucci and Bellnier were personally involved in the First Amendment violations because they created and allowed an unconstitutional policy to exist.  See Dkt. No. 110-1 at 18-19.  It is undisputed that Annucci and Bellnier had policymaking authority and approved Dir. #4921 and Dir. #4911.  See Dkt. No. 96-3 at 38, ¶¶ 71-72; Dkt. No. 104-1 at ¶¶ 2, 58-60; Dkt. No. 104-2 at ¶ 8; Dkt. No. 104-10 at 6.  Therefore, the Court turns to the remaining issues: (1) whether the unconstitutional application of the Directives was the proximate cause of any injury to Plaintiff; and (2) whether Defendants were on notice that the Directives were unconstitutionally applied to Plaintiff resulting in an alleged violation of his First Amendment rights.

### a. Causation

Defendants argue that Zielinski's parcels were not intercepted pursuant Dir. #4921 or Dir. #4911, and offer alternative explanations for DOCCS' personnel's actions.  See Dkt. No. 104-10 at 8-9.  As discussed further, Defendants' arguments and explanations are conclusory, unsupported by admissible evidence, and contradicted by the record before the

---

(W.D.N.Y.2010) (holding that "[o]nly the first and part of the third Colon categories pass Iqbal's muster . . . ."); D'Olimpio v. Crisafi, 718 F.Supp.2d 340, 347 (S.D.N.Y. 2010) (disagreeing that Iqbal eliminated Colon's personal involvement standard).

Court.

With respect to The Skeptic's Bible, Defendants rely upon CORC's March 2018 decision on Plaintiff's grievance (CL-70772-17) and argue that CORC "acknowledged" that Dir. #4921 should not have applied to restrict Plaintiff's access to the Bible and that the determination to disallow the book was "at worst an administrative error by subordinates." See Dkt. No. 104-10 at 8 (citing Dkt. No. 37-6 at 115).  Defendants' argument is unpersuasive and unsupported by the facts of the confiscation of this parcel.

In the subject grievance, Plaintiff claimed that the facility staff would not deliver publications unless the items were ordered and paid for out of inmates' accounts in violation of a court ordered stipulation filed in a Northern District action in 1983.  See Dkt. No. 96-3 at 52.  In March 2018, over one year after Plaintiff filed the grievance, CORC accepted the grievance, in part, and concluded:

> CORC asserts that in accordance with Directive #4921, once a facility has been established as a "TV facility" the results will not be reversed and all inmates at the facility will be subject to the restrictions on personal packages from then on.  As such, the grievant was entitled to two packages per calendar year (Jan.-Dec.) from family, friends or other personal sources that may only contain food items and may not exceed twenty pounds.  However, per the 2/15/18 memorandum from the Acting Deputy Commissioner for Correctional Facilities, staff were advised that package limits set forth in Directive #4921 do not apply to books, magazines and periodicals received from family, friends or other personal sources.

Dkt. No. 48-2 at 115.

While the outcome of that grievance was favorable to Zielinski, CORC's citation to O'Gorman's memorandum, which was issued sixteen months after The Skeptic's Bible was confiscated, does not contradict Plaintiff's claim that the book was improperly confiscated

33

pursuant to Dir. #4921.  Moreover, CORC's March 2018 attempt to explain the actions of

DOCCS' personnel in October 2016 is contradicted by the evidence.  Zielinski testified that,

in October 2016, a package room officer told him that he could not "get stuff from Amazon"

because Clinton is "a T.V. facility."  Dkt. No. 96-4 at 68.  Zielinski's sworn testimony is

supported by the "Non-Food Package Record," which is part of the record and was used by

defense counsel during Plaintiff's deposition.  See Dkt. No. 96-4 at 67.  The form contains

the notation that a package, entitled "The Skeptics Annointed," was received "10-17-16" and

also contains the notation "4921".  See Dkt. No. 48-2 at 113.

With respect to the parcel of books from Books Through Bars, Defendants cite to

CORC's decision on Plaintiff's grievance and argue that Dir. #4752 prohibited Plaintiff from

receiving this parcel.  See Dkt. No. 104-10 at 8.  Again, Defendants' argument is

contradicted by the record before the Court.  The Non-Food Package Record referenced

above includes a notation to Dir. #4921.  See Dkt. No. 48-2 at 113.  Additionally, Kirkpatrick

denied Zielinski's grievance related to the package from Books Through Bars, noting that

"[t]he package in question was denied because it wasn't allowed per directive 4921."  Dkt.

No. 48-1 at 77.  Moreover, Defendants present CORC's decision without the proper

context.  CORC did note that Dir. #4752 prohibited inmates from receiving donated books.

However, CORC also mentioned that "Clinton CF is a TV facility and that at the time the

complaint was filed Directive #4921 only permitted the receipt of packages containing non-

food items if they were ordered and paid for directly by the inmate from an approved

vendor."  Dkt. No. 96-4 at 32.

Finally, with respect to the parcel from Pace Law School, Defendants attempt to

persuade the Court that the Directives were not the proximate cause of any injury to

34

Zielinski, and argue that an administrative error resulted in the parcel being returned to the sender, lost, or destroyed. See Dkt. No. 104-10 at 8-9. Defendants' argument in this regard is not supported by admissible evidence and contradicted by the record. During his deposition, Zielinski testified that he was told that a book arrived from Pace Law School, but that he could not have the package because "it was a T.V. Facility" and he "had to pay for it." Dkt. No. 96-4 at 74. An officer provided Plaintiff with a form entitled "Authorization for Disposal of Personal Property," which indicated that the "legal mail" and book were not permitted because the parcel contained a "handwritten address." Dkt. No. 48-2 at 114. Pursuant to Dir. #4911III(D)(c), "[a] package from a commercial vendor must bear the return address as affixed or printed (not handwritten) by the vendor." Thus, the evidence before the Court suggests that Dir. #4911, created by Annucci and Bellnier, was the reason that the package from Pace Law School was confiscated.

Upon a thorough review of the record, the Court concludes that there are genuine issues of fact related to the relationship between Dir. #4921 and Dir. #4911 and the interception and confiscation of Zielinski's packages, books, and mail. See Pusepa v. Annucci, No. 17-CV-1765 (RA), 2019 WL 690678, at *8 (S.D.N.Y. Feb. 19, 2019) ("Far from a simple wish list of policy changes, the Second Amended Complaint alleges how this combination of specific policies was the cause of a reasonably foreseeable constitutional violation. [The p]laintiff has therefore plausibly alleged that the Supervisory Defendants were liable under the third *Colon* factor.").

### b. Notice

Even assuming that Zielinski established causation, to impute liability to the supervisory

defendants, Zielinski must prove that Bellnier and Annucci were on notice that the Directives were being applied in an alleged unconstitutional manner resulting in the disposition of Plaintiff's packages in violation of the First Amendment.  See Alston v. Bendheim, 672 F. Supp. 2d 378, 389-90 (S.D.N.Y. 2009) ("To maintain [a supervisory claim under section 1983], an inmate must adequately allege that the official had actual or constructive notice of the unconstitutional practices and demonstrated gross negligence or deliberate indifference by failing to act." (internal quotation marks and citation marks omitted)).   In support of their motion for summary judgment, Annucci and Bellnier provided Declarations and aver that they were not aware of the disposition of Zielinski's packages and "no reason to believe" that his First Amendment rights were violated.  Dkt. No. 104-2 at ¶¶ 15, 16; Dkt. No. 104-8 at ¶¶ 5, 6.


### i. CORC Decisions

As an initial matter, Zielinski claims that Annucci was personally involved in the First Amendment violations because CORC decisions "have the force and effect of Directives" and CORC functions on behalf of the Commissioner and under his authority.  Dkt. No. 96-1 at ¶ 69; see 7 NYCRR § 701.5(d)(2)(ii).  This argument, which suggests liability based upon Annucci's supervisory role, has been rejected by the courts.  See Selah v. Fischer, No. 9:09-CV-1363 (GLS/DEP), 2015 WL 1893340, at *9 (N.D.N.Y. Apr. 15, 2015) (rejecting argument that CORC decisions, issued under the Commissioner's authority, suggest personal involvement on behalf of the Commissioner).


### ii. Prior Lawsuits

A plaintiff "may establish that the need for more or better supervision to protect against constitutional violations was obvious' by 'showing that there were repeated complaints of civil rights violations." Kravitz v. Annucci, No. 16-CV-8999 (KMK), 2019 WL 1429546, at *10 (S.D.N.Y. Mar. 29, 2019) (internal quotation marks and citation omitted). Examples of notice may include "prior, specific instances of similar unconstitutional violations." K.A. v. City of New York, 413 F. Supp. 3d 282, 300 (S.D.N.Y. 2019) (citation omitted). Courts do not adhere to any "bright line rule" regarding the number or recency of complaints sufficient to establish notice. Kravitz, 2019 WL 1429546, at *10 (citing Tieman v. City of Newburgh, No. 13-CV-4178 (KMK), 2015 WL 1379652, at *20 (S.D.N.Y. Mar. 26, 2015) (allowing the plaintiff to proceed with supervisory claim based upon nine prior lawsuits in five years)); see Villar v. Cty. of Erie, No. 13-CV-467S (WMS), 2020 WL 33125, at *8 (W.D.N.Y. Jan. 2, 2020) (holding that policymaker's knowledge of 70 past incidents, through letters, and subsequent inaction can suffice to state a claim that the defendant allowed the continuation of a policy under which unconstitutional practices occurred); but see Falls v. Campbell, No. 17-CV-35 (KMK), 2019 WL 1255768, at *6 (S.D.N.Y. Mar. 19, 2019) (holding that "[t]wo lawsuits alleging excessive force over a period of over 14 years [was] insufficient to establish a policy or custom."). When examining prior lawsuits as a basis for notice, courts in this circuit will consider the issue of whether the prior lawsuits resulted in the adjudication of liability. See Kravitz, 2019 WL 1429546, at *10 (dismissing claim against Annucci because the plaintiff's own prior civil rights complaint, dismissed on non-merits grounds, did not show that "DOCCS had a history of mishandling the situation or that the need to act was so obvious such that it may fairly be said that DOCCS had a custom or practice ikely to result in a deprivation of federal rights." (internal quotation marks, brackets, ellipses, and

citations omitted)); <u>Falls</u>, 2019 WL 1255768, at *6 (refusing to consider complaints that "were found to be unsubstantiated or were settled without an admission of liability" as a basis for inferring notice).

Zielinski argues that Annucci was personally involved based upon the <u>Golston</u> petition. <u>See</u> Dkt. No. 104-9 at 5-6.[14]  Zielinski concedes that "there is no reason to believe" that Bellnier was aware of the <u>Golston</u> case.  Dkt. No. 110-1 at 17, n. 4.  The Court summarized and discussed the <u>Golston</u> petition in Part II(B)(2), <u>supra</u>.  While not addressed in the motion for summary judgment, the Amended Complaint also contains facts related to four additional lawsuits that challenged Dir. #4921.  <u>See</u> Am. Compl. at ¶ 87.  Affording Plaintiff special solicitude as a <u>pro se</u> litigant, the Court will examine the facts of those cases, to determine whether those lawsuits, either alone or in combination with <u>Golston</u>, provided sufficient notice to Defendants.

In 2013, Anthony Bottom, an inmate at Attica C.F., filed an Article 78 petition against Annucci challenging Dir. #4921.  <u>See</u> Am. Compl. at ¶ 97; <u>Matter of Bottom v. Annucci</u>, 125 A.D.3d 1070 (3d Dep't 2015).  Bottom sought an order, among other things, compelling the respondents to allow him to receive unrestricted monthly packages.  <u>Matter of Bottom</u>, 125 AD.3d at 1071.  The Appellate Division dismissed the petition, noting that it was undisputed that Attica C.F. was an established "TV facility" and, "as a result of that designation, [the] petitioner's receipt of packages was restricted in accordance with Directive No. 4921 § III(B)."  <u>Id.</u> at 1072.

The three remaining lawsuits were filed in 2006 and 2007 by Great Meadow C.F.

---

[14]  While the petition was pending, Annucci assumed the office of Acting Commissioner.  Dkt. No. 96-1 at 46; Dkt. No. 96-3 at 13, ¶ 1.

inmates.  See Am. Compl. at ¶¶ 88, 91, 94.  Annucci and Bellnier were not parties in those

actions.  In Allen v. Goord, a state court action, the inmate sought a declaratory judgment

and injunction prohibiting the application of Dir. #4921 because it was not properly filed with

the New York Secretary of State and further, because inmates "were not informed of the

conditions under which television sets may be permitted."  Id. at ¶ 88.  The matter was

dismissed without a determination on the merits.  See id. at ¶ 90.  In Clark v. Fischer, an

inmate filed an Article 78 petition challenging the denial of his grievance related to package

restrictions.  See id. at ¶ 94; Clark v. Fischer, 58 A.D.3d 932 (3d Dep't 2009).  The petitioner

addressed Dir. #4921 and raised claims related to breach of contract and equal protection.

Id.  The petitioner sought permission for his family to pay for packages shipped to him from

approved vendors because he lacked sufficient funds in this inmate account.  Id.  The court

dismissed his petition reasoning that the petitioner had not demonstrated that CORC's

determination was "irrational or arbitrary and capricious."  Id. Moreover, in Green v. Greene,

the  plaintiff asserted breach of contract claims related to Dir. #4921.  See Green v. Greene,

et al., No. 9:07-CV-0351 (GTS/DEP), Dkt. No. 1 (N.D.N.Y. Apr. 2, 2007).  The court

dismissed the contractual claims as untimely and lacking in merit.  See id., Dkt. No. 67 at 9-

14.

    For the reasons that follow, the Court finds that summary judgment is warranted

because Zielinski fails to raise an issue of material fact related to Defendants actual or

constructive notice of unconstitutional practices.  First, Zielinski was not a plaintiff or

petitioner in the above actions and Bellnier was not a defendant or respondent.  While

Annucci was a respondent Golston and Bottom, he was not named as a defendant in the

Goord, Clark, or Green actions.  Indeed, the Goord, Clark, and Green actions were

commenced several years before Annucci was appointed Commissioner or Bellnier began his employment with DOCCS.  Second, even assuming Annucci was aware of the Golston and Bottom actions, the actions did not involve First Amendment issues at Clinton C.F. similar to those presented in the case at hand.  Indeed, Bottom was an inmate at Attica C.F.  See Livingston v. Escrow, No. 08-CV-6576 (FPG), 2013 WL 5603870, at *5 (W.D.N.Y. Oct. 11, 2013) (reasoning that the Commissioner was not aware that the plaintiff's constitutional rights were violated where personal involvement was based upon two prior lawsuits involving different inmates that did not raise constitutional violations of an inmate's civil rights resulting from DOCS Directive # 4015); see also Murphy v. Goord, 445 F. Supp. 2d 261, 265 (W.D.N.Y. 2006) (reasoning that the plaintiff failed to establish the Commissioner's involvement based upon "wholly separate lawsuits" to establish that the defendants were personally involved in the alleged deprivation his rights).  Third, while "courts within this Circuit have recognized that prior lawsuits are relevant for showing notice or a custom or practice," five lawsuits filed over the course of five years, is not a "significant number of lawsuits" to provide notice.  See Poulos v. Annucci, No. 9:18-CV-1279 (GTS/ML), 2019 WL 6311012, at *8 (N.D.N.Y. Nov. 25, 2019) (dismissing claims against Annucci based upon the plaintiff's citation to three prior lawsuits); see also Constant v. Prack, No. 16-CV-3985 (NSR), 2019 WL 3287818, at *9 (S.D.N.Y. July 19, 2019) (holding that the plaintiff's amended complaint failed to "establish a pattern of conduct about which [the] defendant should have been on notice to rectify . . .  through updated policies.").  Finally, the aforementioned actions were dismissed and did not result in any liability finding against Annucci, Bellnier, or DOCCS related to Dir. #4921.  See Ortiz v. Annucci, No. 17-CV-3620 (RJS), 2019 WL 1438006, at *5 (S.D.N.Y. Mar. 29, 2019) (finding that the plaintiff failed to

establish personal involvement based upon a prior lawsuit without allegations that the lawsuit yielded a determination of wrongdoing).

Zielinski does not claim, nor has he presented evidence, that he personally notified Annucci or Bellnier of the alleged constitutional process through letters, correspondence, or appeals. Zielinski did not forward his grievances to Annucci or Bellnier and there is no evidence suggesting that either Defendant was involved in the grievance process at Clinton C.F. Indeed, Plaintiff concedes that Annucci does not participate in the grievance review process. See Dkt. No. 104-1 at ¶ 8; Dkt. No. 110 at ¶ 8.

Upon review of the record, the Court finds that Plaintiff has failed to establish, with admissible evidence, that Annucci and Bellnier were aware that Dir. #4921 and Dir. #4911 were applied to Zielinski in a manner that resulted in an alleged violation of his First Amendment rights. Thus, Plaintiff has failed to establish that Defendants were personally involved in the alleged First Amendment violations. Accordingly, it is recommended that Plaintiff's motion for summary judgment, on this ground, be denied. It is also recommended that Defendants' motion for summary judgment and dismissal of Plaintiff's First Amendment claims be granted, for the reasons set forth herein.

### D. Qualified Immunity

Defendants contend that, in the event that the Court finds that Zielinski has raised a genuine issue of material fact as to any claim, Annucci and Bellnier are entitled to qualified immunity because "they cannot be found to have violated any clearly established right."[15]

---

[15] To the extent that Defendants argue that qualified immunity applies with respect to the fifth Colon factor, as discussed supra, Plaintiff has not invoked that factor as a basis for personal involvement.

Dkt. No. 104-10 at 10.

Qualified immunity shields public officials from being sued for conduct undertaken in the course of their duties so long as that conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (internal quotation marks and citations omitted). However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified . . . immunity might still be available . . . if it was objectively reasonable for the public official to believe that his acts did not violate those rights." Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991) (citation omitted). A court must first determine "whether plaintiff's allegations, if true, establish a constitutional violation." Hope v. Pelzer, 536 U.S. 730, 736 (2002) (citation omitted). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. See Aiken v. Nixon, 236 F. Supp. 2d 211, 230 (N.D.N.Y. 2002).

Here, Defendants one-paragraph argument in support of the qualified immunity defense is conclusory in that Defendants do not specify for which constitutional claim they are entitled to qualified immunity. See Dkt. No. 104-10 at 10-11. Accordingly, it is recommended that Defendants' motion, on this ground, be denied. See Field Day, LLC v. County of Suffolk, 709 F. Supp. 2d 205, 214 (E.D.N.Y. June 28, 2011) (denying the defendants' motion for summary judgment based on qualified immunity where the court determined that the defendants' arguments in that regard were "conclusory.").

## III. CONCLUSION

Case 9:17-cv-01087-GTS-CFH Document 113 Filed 11/12/20 Page 43 of 44

**WHEREFORE**, based on the findings set forth above, it is hereby:

**RECOMMENDED** that:

1. Zielinski's motion for summary judgment (Dkt. No. 96) be **DENIED**; and

2. Defendants' cross-motion for summary judgment (Dkt. No. 104) be **GRANTED** as to Plaintiff's Fourteenth Amendment substantive due process claim and Plaintiff's First Amendment claims; and **DENIED** in all other respects; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72.[16]

Dated: November 12, 2020
Albany, New York

---

[16] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(C).

Christian F. Hummel
U.S. Magistrate Judge

44